744 S.E.2d 161

The TOWN OF HOLLYWOOD, Appellant/Respondent,

v.

William FLOYD, a/k/a Jeff Floyd, Troy Readen and Edward McCracken, a/k/a Eddie McCracken, Respondents/Appellants.

Appellate Case No. 2010–174946.

Nos. 27252.

Supreme Court of South Carolina.

Heard Feb. 5, 2013.

Decided May 15, 2013.

Rehearing Denied July 12, 2013.

</div>

468

470

Andrew F. Lindemann, of Davidson and Lindemann, P.A., of Columbia, Hugh Willcox Buyck, of Buyck and Sanders, L.L.C., of Mount Pleasant and Kathleen Fowler Monoc, of Pratt–Thomas Walker, of Charleston, for Appellant/Respondent.

Thomas R. Goldstein, of Belk Cobb Infinger and Goldstein, P.A., of Charleston, for Respondents/Appellants.

Chief Justice TOAL.

The Town of Hollywood (the Town) filed this action against William Floyd, Troy Readen, and Edward McCracken (collectively, the developers) seeking a declaration that the developers may not subdivide their property without approval from the Town's Planning Commission and an injunction prohibiting subdivision of the property until such approval is obtained. The developers filed counterclaims under 42 U.S.C. § 1983 (2006), alleging equal protection and due process violations as well as various state law claims. The circuit court granted summary judgment in favor of the Town on its claims for equitable and declaratory relief, and also granted the Town's motion for a directed verdict on the developers' state law claims. The jury returned a verdict in favor of the Town on the developers' due process claim, but awarded the developers $450,000 in actual damages on their equal protection claim. Both parties appealed. The Town argues the circuit court erred in denying its motions for a directed verdict and judgment notwithstanding the verdict (JNOV) on the developers' equal protection claim, and in granting the developers' motion for attorney's fees and costs. The developers argue the circuit court erred in granting summary judgment in favor of

the Town on its claims for equitable and declaratory relief. This Court certified this case for review pursuant to Rule 204(b), SCACR. We affirm in part and reverse in part.

## FACTUAL/PROCEDURAL HISTORY

In February 2007, the developers entered into a contract to purchase a thirteen-acre tract located on Bryan Road in the Town of Hollywood. Thereafter, the developers filed an application with the Town's Planning Commission to rezone the property for residential use. The Planning Commission heard the matter on June 14, 2007, at which time the developers presented a "preliminary lot sketch" and indicated their intent to subdivide and develop the property into seventeen residential lots. Commissioner Matthew Wolf informed the developers their plans did not require rezoning; instead, Wolf instructed the developers to file for approval with the Planning Commission to subdivide their property. Wolf further stated that before the Planning Commission could hear a subdivision application, the developers needed to give notice to all landowners within a 300–foot radius of their property and gather information about roadways, drainage, and timber removal. Another Commissioner stated,

> Hopefully you can get all this information together and maybe present it at a later date, possibly, and we can act upon it. But as of tonight, based on what has been presented to this Commission, we would not be doing our job as Commissioners if we were to consider it.

The developers asked for clarification as to whether they needed to present the matter to the Planning Commission, and Commissioner Wolf restated that the developers should appear before the Commission again and present "a plat for approval." The Planning Commission ultimately tabled the issue based on "inadequate information and the fact that none of the ordinances of the Town [had] been followed."

The Planning Commission then opened the floor for public comments. Councilwoman Annette Sausser stated she did not support the developers' subdivision.[1] Sausser stated Bryan

---

1. The developers assert that prior to their appearance before the Planning Commission, Sausser approached them, ran "her thumb across

Road was too narrow to handle any additional traffic without improvement and noted the developers' property was located near a dangerous curve where multiple accidents had occurred.[2] Sausser also cited drainage and environmental concerns associated with a nearby marshland and stated the Town's constituents did not support the developers' subdivision.

Other constituents also expressed concern about drainage issues and Bryan Road's ability to withstand additional traffic. One constituent stated, "Bryan Road[ ] is a one-car road. You cannot get two large vehicles past each other. And the idea that there might be another 30 cars coming down through there is just so difficult to imagine." Another constituent stated ingress and egress for residents along Bryan Road would not be satisfactory with additional traffic, and also expressed concern about the ability of emergency vehicles to access the road.

Subsequent to the meeting, the developers met with Kenneth Edwards, the Town's zoning administrator, who indicated he would approve the subdivision himself if the developers applied for it in two phases. Edwards ultimately signed the developers' proposed plats, purporting to approve them, in two stages—half of the lots on June 22, 2007, and the remaining lots on June 27, 2007. Thereafter, the developers closed on the property and recorded the plats in the Charleston County RMC office.

When the developers began working on the subdivision, the Town issued a stop-work order. After the developers indicated they would not comply with the stop-work order, the Town filed this action seeking declaratory and injunctive relief. Specifically, the Town sought a declaration that the developers could not subdivide their property without approval from the Town's Planning Commission and an injunction prohibiting subdivision of the property until such approval was obtained.

---

her neck to simulate cutting her throat," and told them their project would "never happen."

**2.** Sausser stated she was familiar with Bryan Road because she formerly resided in Stono Plantation, a residential neighborhood adjacent to the developers' property which was initially approved for subdivision in 1985. Commissioner Wolf also resides in Stono Plantation.

The developers filed equal protection, due process, and state law counterclaims. Thereafter, the parties struck the case with leave to restore in an effort to resolve the matter through another Planning Commission hearing.

On August 14, 2008, the developers appeared before the Planning Commission a second time to discuss the "preliminary subdivision" of their property. During the meeting, the Planning Commission informed the developers of multiple issues they needed to address before the Commission could approve the subdivision, including an acceptable septic system, a wetlands certification letter, and a traffic study of Bryan Road. Again, constituents expressed concern about Bryan Road's ability to handle a heightened level of traffic and the effect it would have on the dangerous curve adjacent to the developers' property.

In reference to the traffic study, Commissioner Wolf stated, "[N]o one's denying access to the [developers'] lot. No one has ever suggested that there be no access to that lot." Instead, Wolf stated, it is a matter of "commonsense and safety for the Town of Hollywood." Wolf stated Bryan Road is "one of the most dangerous roads in Hollywood" with a high density of traffic. Consequently, Wolf explained, the Planning Commission requested a traffic study to ensure Bryan Road could withstand a heightened level of traffic and that it would not hinder emergency vehicles' access to the properties along Bryan Road. The Planning Commission ultimately tabled the subdivision request until the developers addressed all necessary issues.

On March 29, 2010, the parties restored their case in the circuit court. Thereafter, the Town moved for summary judgment on its claims for declaratory and injunctive relief as well as the developers' counterclaims. In response, the developers submitted an affidavit by William Floyd. Floyd stated that during their first meeting, the Planning Commission instructed the developers they were in the wrong place and directed them to Edwards, the Town's zoning administrator, who subsequently approved their plats. Floyd claimed the Town then took the position that Edwards did not have authority under the Town's ordinances to approve the subdivision, but could not cite to a specific ordinance or produce the

ordinances for review. Floyd claimed he made multiple demands for the ordinances, but the Town claimed it could not produce them because it "was in the process of 'recodifying' them and the [o]rdinances were not in any one place where they could be retrieved." Floyd stated, "The Town has never adopted a consistent policy with us. Rather, it evolves as is necessary to stop us." Floyd further stated, "It is shocking that the Town now cites [o]rdinances which did not exist when this controversy began, and if the [o]rdinances did exist, which I doubt, the Town was unable to produce them."

The circuit court granted the Town's motion for summary judgment as to its claims for equitable and declaratory relief, but denied the motion as to the developers' counterclaims. The circuit court found the Town's ordinances did not vest Edwards with the "authority to approve a final subdivision plat of this kind" or to waive compliance with the subdivision-approval process set forth in the Town's ordinances; rather, because the developers intended to subdivide their property into more than three lots, the circuit court found the Planning Commission must approve the subdivision plats. The circuit court further found that although the Town's ordinances were in the process of recodification during the developers' application process, they were effective during this time because the Town adopted them in 1998 and preserved the original language in the recodified version. Accordingly, the circuit court ruled the developers may not subdivide their property without the Planning Commission's approval, and that the plats Edwards signed were "null, void and of no effect."

At trial, Edward Horton, the Town's current zoning administrator, testified he informed the developers, by way of letter and orally before the Planning Commission, of the requirements they needed to meet before the Commission would approve their subdivision. These requirements included approval of a septic system, alternate access routes, and a tree survey, which are required of all developers. Commissioner Wolf testified the Planning Commission also informed the developers they needed to conduct a traffic study along Bryan Road, noting "traffic is one of the key issues for any development [the Commission] review[s]." Wolf further testified that although the Town's ordinances did not require traffic studies, the Planning Commission requires them as a matter of discre-

tion "where there is a . . . critical juncture like this particular case where you have a dangerous intersection with a . . . road that doesn't conform to any county or state standards."

Mayor Jacqueline Heyward testified the Planning Commission did not require a traffic study for Wide Awake Park, a seven-acre park located on Trexler Avenue, because the park was already developed when the Town acquired it. Mayor Heyward further noted lots were consolidated, rather than subdivided, to make Wide Awake Park possible. Mayor Heyward also briefly testified about Holly Grove, a low-income housing project located on Baptist Hill Road. Mayor Heyward testified Holly Grove was initiated prior to her tenure as mayor and that she did not think the Planning Commission required a traffic study, but stated Holly Grove was a "planned development, which is different from a subdivision." Mayor Heyward explained that although a planned development is subject to the zoning process, including a wetland study, that process is different from the process of subdividing a piece of property. Mayor Heyward further testified that neither Baptist Hill Road nor Trexler Avenue were dangerous roads.

After the developers rested, the Town moved for a directed verdict on all of the developers' counterclaims, arguing they failed to meet their burden of proof. Regarding the equal protection claim, the developers responded,

> The obvious disparity is in the adjoining subdivision, which is Stono Plantation. No one has required Stono Plantation to provide a traffic study or to prove that they have access, and, in fact, the two subdivisions sit side by side and utilize the same access, so it is abundantly clear in this record that the two similarly situated property owners are being held to different standards.

Conversely, the Town argued the developers failed to present any evidence concerning the process Stono Plantation, or any other development, underwent to obtain subdivision approval. The developers responded, "Your Honor, I think it's unnecessarily complicated. Bryan Road is either open to the public or it's not." The circuit court granted the Town's motion for a directed verdict on the developers' state law claims, but denied

the motion as to the developers' equal protection and due process claims.

After an initial deadlock, the jury returned a verdict for the Town on the developers' due process claim, but awarded the developers $450,000 in actual damages on their equal protection claim. The Town filed a post-trial motion for a JNOV, which the circuit court denied. The developers filed a motion for reconsideration of the circuit court's grant of summary judgment on the Town's claims, and for attorney's fees and costs. The circuit court denied the motion for reconsideration but granted the motion for attorney's fees and costs, finding the developers were entitled to fees under Section 15–77–300 of the South Carolina Code because they were the "prevailing party."

## ISSUES PRESENTED

I.  Whether the circuit court erred in granting the Town's motion for summary judgment on its claims for equitable and declaratory relief.[3]

II. Whether the circuit court erred in denying the Town's motions for a directed verdict and JNOV on the developers' equal protection claim, and in awarding attorney's fees and costs.

## STANDARD OF REVIEW

By statute, the trial court must uphold a decision by the Planning Commission unless there is no evidence to support it. *Kurschner v. City of Camden Planning Comm'n*, 376 S.C. 165, 173, 656 S.E.2d 346, 351 (2008) (citing S.C.Code Ann. § 6–29–840 (2005)). This Court will uphold the trial judge's decision unless it was based on an error of law or is not supported by the evidence. *Id.* at 174, 656 S.E.2d at 351.

## LAW/ANALYSIS

### I. Equitable and Declaratory Relief

The developers argue the circuit court erred in granting the Town's motion for summary judgment on its claims for equita-

---

3. This issue addresses both of the questions the developers present to this Court.

ble and declaratory relief. The developers contend the circuit court "erred by not giving any weight" to Floyd's affidavit and refusing to "accept that the Town operates without published ordinances even though the affidavit ... creates a genuine issue of material fact on this point." The developers assert they presented evidence that the ordinances did not exist at the time they applied for the subdivision of their property, and that "the ordinances came into existence after the fact to bolster the Town's position." The developers argue that because the existence of the ordinances is in doubt, it is impossible for this Court to conclude Edwards' approval of the plats was *ultra vires*. The developers further contend that if the Town's ordinances did exist, summary judgment was nevertheless improper because, under section 30–12 of the Town's Code, their "subdivision application" was automatically approved after the Planning Commission failed to take action on it within sixty days. We disagree.

In reviewing a grant of summary judgment, the appellate court applies the same standard as the trial court under Rule 56(c), SCRCP. *Quail Hill, L.L.C. v. Cnty. of Richland,* 387 S.C. 223, 234, 692 S.E.2d 499, 505 (2010). Summary judgment is proper if, viewing the evidence in a light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.* (citing Rule 56(c), SCRCP). However, it is not sufficient for a party to create an inference that is not reasonable or an issue of fact that is not genuine. *Evans v. Stewart,* 370 S.C. 522, 526, 636 S.E.2d 632, 635 (Ct.App.2006).

Section 30–7 of the Town's Code states no subdivision plat may be filed or recorded in the RMC Office and no building permits may be issued "until the plat ... has been submitted to and approved by the town planning commission according to the procedures set forth in this chapter." HOLLY-WOOD, S.C., CODE § 30–17 (2008). Section 30–34 provides the Planning Commission's procedure for review and approval of subdivision plats shall consist of two separate steps: (1) review and approval of a preliminary plat, and (2) review and approval of a final plat. HOLLYWOOD, S.C., CODE § 30–34(a) (2008). That section further provides that "the developer may

submit a sketch plan for the planning commission's informal review prior to step one." HOLLYWOOD, S.C., CODE § 30–34(b). However, as an exception to the general rule that subdivision plats must be approved by the Planning Commission, section 30–12 states the Town's zoning administrator may approve and sign plats without referring them to the Planning Commission upon a finding that all requirements have been met and the property is being subdivided into "three or fewer lots." HOLLYWOOD, S.C., CODE § 30–12(1) (2008).

We find the circuit court properly granted summary judgment in favor of the Town with respect to its claims for declaratory and injunctive relief. The Town's ordinances clearly state the Planning Commission, rather than the zoning administrator, must approve subdivision plats if the property is subdivided into more than three lots. *See* HOLLYWOOD, S.C., CODE §§ 30–12, 34. Because the developers intended to subdivide their property into seventeen lots, Edwards did not have authority to approve their plats. *See id.; see also Carolina Chloride, Inc. v. Richland Cnty.,* 394 S.C. 154, 166–68, 714 S.E.2d 869, 874–76 (2011) (stating misrepresentations of law made by a zoning administrator are generally not actionable even if made in good faith); *Quail Hill,* 387 S.C. at 236–38, 692 S.E.2d at 506–07 (finding a governmental entity is not estopped from enforcing its ordinances where its employee gives erroneous information or acts in contradiction to an ordinance); *Carolina Nat'l Bank v. State,* 60 S.C. 465, 473, 38 S.E. 629, 632 (1901) (stating a "public officer derives his authority from statutory enactment" and all persons dealing with an officer outside his scope of authority do so at their own peril).

■ Although the developers claim the Town enacted its ordinances after the developers' subdivision application in an effort to thwart their project, the preface of the Town's Code states it was adopted in 1998 and simply recodified in 2008. HOLLYWOOD, S.C., CODE, Preface (2008), *available at* http://library.municode.com/index.aspx?clientId=14414 (last visited Jan. 30, 2013). Additionally, the 2008 version of the Code lists the section number each ordinance held in the 1998 version. *See, e.g.,* HOLLYWOOD, S.C., CODE §§ 30–12, 34, 37–38. Thus, the Town's ordinances requiring that the Planning Commission approve subdivision plats existed long before the develop-

ers sought to subdivide their property in 2007. Although we are troubled by the Town's inability to produce a copy of its Code on at least one occasion, we find the developers were on notice that their intended subdivision would require approval from the Planning Commission. During their first meeting, the Planning Commission instructed the developers that rezoning was unnecessary, and that the developers would instead need to gather additional information and appear before the Commission at a later date to present a plat for approval. We take this opportunity, however, to remind the Town that its ordinances must be made "available for public inspection at reasonable times" as required by Section 5–7–290 of the South Carolina Code.

■ We also reject the developers' argument that their subdivision application was automatically approved due to the Planning Commission's alleged failure to approve or deny the application within sixty days. This argument is not preserved for this Court's review because the circuit court did not rule on it and the developers did not include it in their Rule 59(e), SCRCP, motion for reconsideration. *See Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 23–24, 602 S.E.2d 772, 779–80 (2004) (stating an issue must be raised to and ruled upon by the trial court in order to be preserved for appellate review, and that a party must file a Rule 59(e), SCRCP, motion to preserve an issue the trial court fails to rule on).

Accordingly, we find the circuit court properly granted summary judgment in favor of the Town on its claims for declaratory and injunctive relief.

## II. Equal Protection and Attorney's Fees

■ The Town argues the circuit court erred in denying its motions for a directed verdict and JNOV on the developers' equal protection claim because they failed to demonstrate that the Planning Commission treated them differently than other similarly situated developers. The Town asserts that neither Wide Awake Park nor Holly Grove is similarly situated to the developers' property because one is a park and the other is a low-income planned development. The Town further contends the circuit court erred in granting the developers' motion for attorney's fees and costs because the Town was entitled to a

directed verdict or JNOV on the equal protection claim or, at the very least, acted with "substantial justification" in defending that claim. We agree.

When reviewing the trial court's ruling on a motion for a directed verdict or JNOV, this Court applies the same standard as the trial court by viewing the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *RFT Mgmt. Co. v. Tinsley & Adams, L.L.P.*, 399 S.C. 322, 331–32, 732 S.E.2d 166, 171 (2012). The trial court must deny a motion for a directed verdict or JNOV if the evidence yields more than one reasonable inference or its inference is in doubt. *Id.* Moreover, a JNOV motion may be granted only if no reasonable juror could have reached the challenged verdict. *Id.* This Court will reverse the trial judge's ruling only when there is no evidence to support the ruling or it is controlled by an error of law. *Carolina Chloride*, 394 S.C. at 163, 714 S.E.2d at 873.

No person shall be denied equal protection of the law. U.S. CONST. AMEND. XIV, § 1; S.C. CONST. ART. I, § 3; *Sunset Cay, L.L.C. v. City of Folly Beach*, 357 S.C. 414, 428, 593 S.E.2d 462, 469 (2004). "The *sine qua non* of an equal protection claim is a showing that similarly situated persons received disparate treatment." *Grant v. S.C. Coastal Council*, 319 S.C. 348, 354, 461 S.E.2d 388, 391 (1995). Where an alleged equal protection violation does not implicate a suspect class or abridge a fundamental right, the rational basis test is used. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000); *Dunes W. Golf Club, L.L.C. v. Town of Mt. Pleasant*, 401 S.C. 280, 293, 737 S.E.2d 601, 608 (2013); *Sunset Cay*, 357 S.C. at 428–29, 593 S.E.2d at 469. To prevail under the rational basis standard, a claimant must show similarly situated persons received disparate treatment, and that the disparate treatment did not bear a rational relationship to a legitimate government purpose. *Dunes W.*, 401 S.C. at 293–94, 737 S.E.2d at 608; *Bibco Corp. v. City of Sumter*, 332 S.C. 45, 53, 504 S.E.2d 112, 116 (1998).

In *Dunes West*, the Court clarified that the equal protection clause does not prohibit different treatment of people in different circumstances under the law. *Dunes W.*, 401 S.C. at 294–95, 737 S.E.2d at 608–09 (quoting *Harbit v. City of*

*Charleston*, 382 S.C. 383, 396, 675 S.E.2d 776, 782–83 (Ct.App. 2009)). In that case, the Dunes West Golf Club (Dunes West) brought an equal protection claim against the Town of Mount Pleasant after it denied Dunes West's petition to rezone a portion of the golf course property for residential use. *Id.* at 286–87, 737 S.E.2d at 604–05. The circuit court granted summary judgment in favor of Mount Pleasant. *Id.* Dunes West appealed, arguing summary judgment was improper because it presented evidence that Mount Pleasant granted another substantially similar rezoning petition and there was no rational basis for the disparate treatment. *Id.* at 293, 737 S.E.2d at 608. This Court affirmed, finding there were material differences between the two rezoning petitions which demonstrated a rational basis for treating them differently. *Id.* at 294–95, 737 S.E.2d at 608–09. Specifically, the Court noted that unlike Dunes West's rezoning petition, the comparator's petition, Snee Farm Country Club, was accompanied by a comprehensive development proposal and a detailed impact assessment, involved virtually no alteration to golf course areas of play, received general support from the community, and stipulated that monies generated from the rezoning were to be applied to specific recreational improvements. *Id.* Dunes West's petition, on the other hand, did not contain an impact assessment, was opposed by the community, and required alterations to wetlands, existing easements, and numerous areas of the golf course. *Id.*

We find the circuit court erred in denying the Town's motions for a directed verdict and JNOV because the developers failed to show the Planning Commission treated them differently than other similarly situated developers in the subdivision application process. Instead, the developers claim "this case is not the traditional equal protection case" and cite arguments in support of their due process claim. Specifically, the developers argue Councilwoman Sausser acted improperly by making a throat-cutting gesture and stating their development would "never happen." The developers further contend Commissioner Wolf should not have participated in the Planning Commission hearings because he lives in the adjoining subdivision. However, while the developers assert these actions alone demonstrate a denial of equal protection, the alleged misconduct relates only to the developers' due process

claim, which the jury rejected and the developers did not appeal. The developers' confusion is further highlighted by the fact that they quote *due process* law in support of their equal protection argument, including *A Helping Hand, L.L.C. v. Baltimore*, 515 F.3d 356 (4th Cir.2008) (discussing the factors to be considered for a substantive due process claim).

The pertinent issue before this Court is whether the developers presented evidence that the Planning Commission treated them differently than other similarly situated developers. *See Dunes W.*, 401 S.C. at 293–94, 737 S.E.2d at 608; *Bibco Corp.*, 332 S.C. at 53, 504 S.E.2d at 116; *Grant*, 319 S.C. at 354, 461 S.E.2d at 391. We find that, like the plaintiff in *Dunes West*, the developers failed to meet their burden of proof.

In response to the Town's motion for a directed verdict during trial, the developers argued the Planning Commission treated the developers of Stono Plantation differently because it did not require a traffic study despite the fact that Stono Plantation is adjacent to the developers' property. However, Stono Plantation is not a "similarly situated" comparator because it was approved for subdivision in 1985, long before the Town adopted its ordinances and created the Planning Commission in 1998.

The developers also argued the Planning Commission treated them differently than the developers of Wide Awake Park and Holly Grove because the Commission did not require traffic studies for those projects. However, there are material differences between those projects and the developers' subdivision. *See Dunes W.*, 401 S.C. at 294–95, 737 S.E.2d at 609. Wide Awake Park is a public park rather than a residential subdivision, was already developed when the Town acquired it, and required consolidation rather than subdivision of lots. Holly Grove is a low-income, "planned development" subject to a different approval process than residential subdivisions. Moreover, unlike the developers' subdivision, the community did not oppose either of those projects. *See id.* (stating public opposition furnishes a rational basis for disparate treatment in zoning decisions).

Additionally, neither Wide Awake Park nor Holly Grove is located on Bryan Road and the developers failed to present evidence suggesting the projects posed the same

traffic and safety concerns as the developers' proposed subdivision. The Town presented evidence that Bryan Road is "one of the most dangerous roads in Hollywood" and that the developers' property is located along a dangerous curve where multiple accidents have occurred. Commissioner Wolf testified the Planning Commission's purpose behind requiring a traffic study was to ensure Bryan Road could safely support additional travelers. Because the addition of a new residential subdivision on Bryan Road would create a heightened level of traffic, we find the Planning Commission's decision to require a traffic study was rationally related to the legitimate goal of maintaining the safety of its citizens living and traveling along Bryan Road. *See Strickland v. State*, 276 S.C. 17, 21, 274 S.E.2d 430, 432 (1981) (stating the government has a legitimate interest in the safety of those using public roadways). We further find there are material differences between the developers' subdivision and its alleged comparators—Wide Awake Park and Holly Grove—which demonstrate a rational basis for treating them differently. *See Dunes W.*, 401 S.C. at 295, 737 S.E.2d at 609; *Harbit*, 382 S.C. at 396, 675 S.E.2d at 782–83.

Accordingly, we find the circuit court erred in denying the Town's motions for a directed verdict and JNOV on the developers' equal protection claim. Because the developers are no longer the "prevailing party," we also find the circuit court erred in awarding attorney's fees and costs to the developers. *See* S.C.Code Ann. § 15–77–300(A) (stating the "prevailing party" may recover reasonable attorney's fees).

## CONCLUSION

We affirm the circuit court's grant of summary judgment in favor of the Town on its claims for declaratory and injunctive relief, reverse the circuit court's denial of the Town's motions for a directed verdict and JNOV on the developers' equal protection claim, and reverse the circuit court's award of attorney's fees and costs to the developers.

**AFFIRMED IN PART AND REVERSED IN PART.**

PLEICONES, BEATTY, KITTREDGE, and HEARN, JJ., concur.