# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Phillip D. Grimsley, Sr. and Roger M. Jowers, on Behalf of Themselves and Others Similarly Situated, Respondents,

v.

South Carolina Law Enforcement Division and the State of South Carolina, Defendants,

of whom South Carolina Law Enforcement Division is the Petitioner.

Appellate Case No. 2014-001059

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Richland County
J. Ernest Kinard, Jr., Circuit Court Judge

---

Opinion No. 27598
Heard September 23, 2015 – Filed December 23, 2015

---

## REVERSED

---

William H. Davidson, II and Kenneth P. Woodington, both of Davidson & Lindemann, P.A., of Columbia, for Petitioner.

A. Camden Lewis and Ariail E. King, both of Lewis, Babcock & Griffin, L.L.P., of Columbia; Richard A. Harpootlian, of Richard A. Harpootlian, P.A., of Columbia; John A. O'Leary, of O'Leary & Associates, P.A., of Columbia; and James Walter Fayssoux, Jr., of Fayssoux Law Firm, P.A., of Greenville, for Respondents.

---

**JUSTICE KITTREDGE:** We granted a writ of certiorari to review the court of appeals' opinion in *Grimsley v. South Carolina Law Enforcement Division* (*Grimsley II*), 408 S.C. 38, 757 S.E.2d 542 (Ct. App. 2014), which reversed the trial court's grant of summary judgment in favor of Petitioner South Carolina Law Enforcement Division (SLED). We reverse.

Respondents are former SLED agents who retired and were rehired by then SLED Chief Robert Stewart for a period of four years pursuant to a rehire program formulated by Chief Stewart. At the conclusion of Respondents' service under the rehire program, they filed suit against SLED and the State under various theories, all premised on the allegation that SLED deducted from their salaries the amount of the employer's contribution to the retirement system. The State was granted dismissal of the Complaint pursuant to Rule 12(b)(6), SCRCP.[1] On appeal, taking the allegations of the Complaint as true, we reversed and remanded. *Grimsley v. S.C. Law Enforcement Div.* (*Grimsley I*), 396 S.C. 276, 279, 283–86, 721 S.E.2d 423, 424, 427–28 (2012).

On remand and following discovery, the trial court granted SLED summary judgment, which the court of appeals reversed. Having carefully reviewed the record, we find the trial court properly granted summary judgment to SLED, for the record makes clear that Respondents were rehired at reduced salaries and the employer contributions to the retirement system were not deducted from those salaries, but were paid by SLED. As a result, we reverse the court of appeals and direct that judgment be entered for SLED.

---

[1] SLED did not join in the State's motion to dismiss or participate in the appeal that followed. *Grimsley v. S.C. Law Enforcement Div.* (*Grimsley I*), 396 S.C. 276, 280 n.2, 721 S.E.2d 423, 425 n.2 (2012).

# I.

This case arises out of a dispute over a hiring program created by SLED involving participants in the Police Officers Retirement System (PORS). We now have the benefit of an extensive record following discovery, and the essential facts are not in dispute. In 2002, the General Assembly eliminated salary caps for so-called working retirees, that is, state employees who retired and then returned to work. This allowed state employees, including members of the PORS like Respondents, to retire, collect full retirement benefits, and then return to their former jobs at salaries that could have been, but were not required to be, the same as their pre-retirement salaries. Shortly after the salary cap was eliminated, Chief Stewart developed the program in question, informally called the Retirement/Rehire program (Program).

Chief Stewart created the Program, in part, because an existing program, the Teacher and Employee Retention Incentive (TERI) program, was not available for members of the PORS. Chief Stewart described the Program as benefiting all involved—SLED, its employees, and the people of South Carolina. SLED benefited because the Program allowed more experienced employees to remain in service after becoming eligible to retire, working alongside agents with less experience. To the extent employees were rehired at reduced salaries, SLED also benefited by saving money, thereby allowing the agency to avoid layoffs while maintaining services. The citizens and taxpayers of South Carolina benefited from SLED's ability to maintain a high level of service at a reduced cost. Finally, Program participants benefited by drawing retirement benefits while still working and earning a salary, albeit a reduced salary.[2]

To participate in the Program, employees had to retire, submit a request to be rehired, and if selected to be rehired, agree to a number of conditions. Chief Stewart cautioned employees considering the Program that they should not participate unless they were ready to immediately and permanently retire. Respondents Phillip Grimsley and Roger Jowers were longtime SLED employees who decided to apply to participate in the Program. Between April and August 2004, Respondents retired, requested to be rehired, and were rehired by SLED.

Respondents clearly understood the Program's conditions, which included a reduction in their salaries and a term of employment not to exceed four years.

---

[2] This was no minor benefit. For 2005, the first full year that Respondent Phillip Grimsley participated in the Program, his rehire salary and retirement benefits totaled $81,476.04. His annual pre-retirement salary was approximately $55,000.

Respondents signed multiple forms confirming the details of the arrangement were just as SLED had asserted. One of those forms, a re-employment orientation form, stated that Respondents' salaries were being reduced "to cover the amount it will cost SLED to pay the employer portion of retirement." Chief Stewart said that he decided to reduce the salaries of Program participants by the amount of the employer retirement contribution to provide some degree of savings to taxpayers from rehiring retired agents. He also stated that using that percentage established a uniform reduction figure for working retirees' salaries. This uniform approach to determining Program participants' rehire salaries lessened the potential for complaints from the rehired agents and simplified the Program's administration.

After participating in the Program for the agreed-upon four years, Respondents received letters in 2008 thanking them for their service and informing them that their employment would be ending. During their service as rehired agents, Respondents never complained about their salaries or the issue of the employer retirement contribution.

A few months later, in December 2008, Respondents filed suit seeking recovery for alleged statutory and constitutional violations. Respondents' statutory claims were premised on alleged violations of section 9-11-90(4)(b) of the South Carolina Code, which requires employers, such as SLED, to "pay to the [retirement] system the employer contribution for active members prescribed by law with respect to any retired member engaged to perform services for the employer, regardless of whether the retired member is a full-time or part-time employee or a temporary or permanent employee." S.C. Code Ann. § 9-11-90(4)(b) (Supp. 2014).

As noted, the trial court granted the State's motion to dismiss as to all of Respondents' claims. On appeal, we reversed based on the standard of review; accepting as true the allegation that SLED rehired Respondents at their former salaries and then deducted the employer retirement contribution from those salaries, Respondents had pled a viable claim. *Grimsley I*, 396 S.C. at 283–86, 721 S.E.2d at 427–28. After this Court issued its decision in *Grimsley I* and the parties engaged in discovery, the parties filed cross-motions for summary judgment. It is the trial court's ruling on those motions that led to the current appeal.[3]

In their motion, Respondents sought summary judgment on the ground that the Program required Respondents to pay the employer's retirement contribution to the

---

[3] By the time the trial court ruled on the cross-motions for summary judgment, the State had been dismissed as a party, without objection.

state retirement system, in violation of section 9-11-90, the constitutional prohibition against takings, and constitutional due process requirements. Respondents argued that SLED violated the plain language of section 9-11-90, which requires employers to pay retirement contributions for working retirees in the same manner as non-retired employees, by deducting the employer contribution from their salaries.[4]  Respondents' constitutional claims relied in part on this Court's decision in *Grimsley I*, in which we held Respondents had a cognizable property interest in their salaries, unreduced by any amount required to be paid by their employer.  *See Grimsley I*, 396 S.C. at 284–85, 721 S.E.2d at 427–28 (concluding that Respondents' Complaint alleged interference with a property interest rooted in state law and was sufficient to maintain a takings claim).

In support of its motion for summary judgment, SLED relied on the facts as revealed in discovery.  More to the point, SLED contended it had conclusively established that the required employer retirement contribution was never deducted from Respondents' salaries but was, in fact, always paid by SLED.  SLED further noted that Respondents retired unconditionally and agreed to be rehired at a reduced salary, and an employee who retires has no unconditional right to be rehired at all, much less at a particular salary.  The trial court agreed, granting SLED's motion for summary judgment and denying Respondents' motion.

On appeal, the court of appeals reversed, finding there was a genuine issue of material fact as to whether SLED rehired Respondents at their pre-retirement salaries and whether SLED deducted the employer contribution to the retirement system from those salaries.  This Court granted SLED's petition for a writ of certiorari to review the court of appeals' decision.

---

[4] Respondents also claimed that SLED misappropriated funds that were earmarked to pay employees' salaries.  *See* S.C. Code Ann § 11-9-10 (2011) ("It shall be unlawful for any monies to be expended for any purpose or activity except that for which it is specifically appropriated . . . .").  Respondents argued that because the General Assembly appropriated funds to SLED that would allow SLED to pay the retired agents' pre-retirement salaries, SLED violated section 11-9-10 by paying Respondents the lower, post-retirement salaries.  Respondents misapprehend the budgeting and appropriations process.  The total amount appropriated to a state agency for a class of employees' salaries in no manner determines an individual employee's salary.  Moreover, as is explained more fully below, the record establishes that SLED paid the employer contribution to the retirement system as required.

## II.

SLED argues the court of appeals erred in reversing the trial court's grant of summary judgment in its favor because the undisputed facts establish that Respondents were rehired at new salaries and no employer retirement contribution was deducted from those salaries; therefore, SLED contends, it is entitled to a judgment as a matter of law. We agree.

### A.

"An appellate court reviews the granting of summary judgment under the same standard applied by the trial court . . . ." *Quail Hill, L.L.C. v. Cnty. of Richland*, 387 S.C. 223, 235, 692 S.E.2d 499, 505 (2010) (citing *Brockbank v. Best Capital Corp.*, 341 S.C. 372, 379, 534 S.E.2d 688, 692 (2000)). "[A] trial court may grant a motion for summary judgment 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* at 234, 692 S.E.2d at 505 (quoting Rule 56(c), SCRCP). "'In determining whether any triable issue of fact exists, the evidence and all inferences which can *reasonably* be drawn therefrom must be viewed in the light most favorable to the nonmoving party.'" *Id.* at 235, 692 S.E.2d at 505 (emphasis added) (quoting *Pye v. Estate of Fox*, 369 S.C. 555, 563, 633 S.E.2d 505, 509 (2006)). Even though courts are required to view the facts in the light most favorable to the nonmoving party, to survive a motion for summary judgment, "it is not sufficient for a party to create an inference that is not reasonable or an issue of fact that is not genuine." *Town of Hollywood v. Floyd*, 403 S.C. 466, 477, 744 S.E.2d 161, 166 (2013) (citing *Evans v. Stewart*, 370 S.C. 522, 526, 636 S.E.2d 632, 635 (Ct. App. 2006)).

### B.

Following remand from this Court in *Grimsley I*, the parties engaged in discovery which revealed Respondents were rehired with new, reduced salaries and were never responsible for paying the employer retirement contribution. To the contrary, the evidence showed SLED paid the required employer retirement contribution at all times.

On May 20, 2004, Respondent Grimsley sent a letter to Chief Stewart expressing his intention to retire on June 30 of that year and acknowledging that he would have to request to be rehired. That June, Grimsley formally requested to be

rehired, agreeing to a salary "13.6% less than [his] previous base salary." In July, SLED agreed to rehire Grimsley based on Grimsley's written acceptance of a salary equal to his "previous base salary less 13.6%." Respondent Jowers signed forms that, while containing different dates and amounts, were identical in all relevant respects.

Deposition testimony and affidavits from SLED employees confirm that Respondents received exactly what they bargained for. Lynn Hutto, the director of human resources at SLED at the time, testified that Respondents and other Program participants were "rehired . . . at a new salary." Chief Stewart avowed that, although "[Respondents'] new salaries upon rehire were in fact 13.6% lower than their pre-retirement salaries, . . . the employer contribution has never been deducted from their paychecks." He further explained that "there is no such thing as a payroll deduction for the employer contribution to the PORS, because the employer contribution is paid from the amount appropriated to the agency for benefits funding, and not from the amount appropriated and used for employees' salaries." The record fully confirms this assertion. Teresa Kitchens, Director of Human Resources at SLED, stated that each employee's pay stub has a block to show the employee's retirement contribution, but does not have a block to show the employer's retirement contribution "because the employer contribution is never deducted from the gross salary of the employee[]." In fact, Jowers's first pay stub after being rehired showed that no funds were deducted under the "retirement" category, indicating that, at the time, not even an employee retirement contribution was deducted from the salaries of working retirees like Respondents. Finally, Donald Royal, Director of Administration at SLED, confirmed that the employer's retirement contribution "is not included within the salary of the employee, and therefore is not deducted from the salary of the employee." The contribution is "completely separate from, and in addition to, the amount of the employee's salary." Again, the record bears out SLED's contention that it paid the employer's contribution to the retirement system, as the evidence demonstrates that SLED transferred the employer's retirement contribution periodically, out of funds appropriated to pay for employees' fringe benefits, "in an amount equal to the appropriate percentage . . . of the total salary amount actually paid."

## C.

Citing an isolated phrase in one of many forms signed by Respondents—"[y]ou will have a reduction of 13.6% in your salary to cover the amount it will cost SLED to pay the employer portion of retirement"—the court of appeals concluded that "a reasonable jury could find SLED agreed to pay each rehired employee the

same salary it paid before retirement, and the percentage reduction represents an illegal requirement that the employee pay the retirement contribution the employer is required to pay under subsection 9-11-90(4)(b)." *Grimsley II*, 408 S.C. at 39–40, 757 S.E.2d at 543. Instead of viewing the entirety of the record, the court of appeals cherry-picked a single sentence from a single form, and did so out of context. The court of appeals elevated what is, at best, a metaphysical doubt into a genuine issue of material fact. *See Russell v. Wachovia Bank, N.A.*, 353 S.C. 208, 220, 578 S.E.2d 329, 335 (2003) ("When opposing a summary judgment motion, the nonmoving party must do more than 'simply show that there is a metaphysical doubt as to the material facts but must come forward with specific facts showing that there is a genuine issue for trial.'" (quoting *Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 115, 410 S.E.2d 537, 545 (1991)) (internal quotation marks omitted)). When properly viewed in the context of the parties' discussion and agreement about what Respondents' salaries were to be upon returning to employment, the form is consistent with the other evidence showing that Respondents retired unconditionally and were rehired at new salaries.

The trial court therefore correctly found Respondents' claims had no basis in fact as Respondents were unable to produce any evidence that they were rehired at their previous salaries or that the employer retirement contribution was ever deducted from their pay. As the evidence leaves no doubt that SLED paid the employer retirement contribution at all times, Respondents' claims fail.

## III.

We reverse the court of appeals and reinstate the trial court's entry of judgment for SLED.

**REVERSED.**

**TOAL, C.J., BEATTY, HEARN, JJ., and Acting Justice James E. Moore, concur.**