796 S.E.2d 158

In the MATTER OF the ESTATE OF Eris Singletary SMITH

In re: Eris Gail Smith, Appellant,

v.

Judy Smith Jones, Jacquelyn Brown, James Ervin Smith, Timothy David Smith, Jamie Smith, and Mikie Smith, Defendants,

Of whom Judy Smith Jones is the Respondent.

Appellate Case No. 2013-002810
Opinion No. 5462

Court of Appeals of South Carolina.

Heard October 15, 2015

Filed December 21, 2016

Rehearing Denied February 24, 2017

112

C. Mitchell Brown and William C. Wood, Jr., both of Nelson Mullins Riley & Scarborough, LLP, of Columbia, and Gary Ivan Finklea, of Finklea Law Firm, of Florence, for Appellant.

Jon Rene Josey and Jeffrey L. Payne, both of Turner Padget Graham & Laney, PA, of Florence; and Robert E. Lee, of Robert E. Lee, LLC, of Marion, for Respondent.

KONDUROS, J.:

Eris Gail Smith (Smith) appeals the circuit court's order granting summary judgment to her sister, Judy Jones (Jones), in this dispute over the will of their deceased mother, Eris Singletary Smith (the Testator). On appeal, Smith argues (1) the circuit court prematurely granted summary judgment before the parties had a full and fair opportunity to complete discovery and (2) summary judgment was improper because genuine issues of material fact existed regarding the presence of undue influence and fraudulent inducement in the execution of the Testator's purported will. We affirm.

## FACTS/PROCEDURAL HISTORY

The Testator died on March 11, 2013. On March 13, 2013, Jones submitted a petition to be appointed as the Testator's personal representative (PR) and to probate the Testator's October 18, 2011 will (the Lee Will), which the Testator executed with the assistance of attorney Robert E. Lee. The Lee Will appointed Jones as the PR of the Testator's estate and Rebecca Jones Cain (Becky), the Testator's granddaughter and Jones's daughter, as the alternate PR. The Lee Will divided the residue of the Testator's estate into six equal shares—a share for each of the Testator's five surviving children and a share to be inherited and split by two of her grandsons, Jamie and Mikie Smith. Two witnesses, attorney Cyrus Sloan and receptionist Brittany Hooks, and the Testator signed the Lee Will and a self-proving affidavit on October 18, 2011.

On April 1, 2013, Smith filed with the probate court a petition challenging the Lee Will as the product of undue influence and fraudulent inducement. Smith also submitted a petition to be appointed as the PR of the Testator's estate and to probate a different will the Testator had executed with the assistance attorney Frederick A. Hoefer, II, on March 30, 2011 (the Hoefer Will). The Hoefer Will appointed Smith as the PR of the Testator's estate, appointed Hoefer as the alternate PR, and divided the Testator's home and the residue of the estate equally between the Testator's five surviving children. On May 14, 2013, the claim was removed from the probate court to the circuit court.

On May 31, 2013, Jones moved for summary judgment on Smith's petition, arguing Smith failed to produce any evidence the Testator was unduly influenced or fraudulently induced into signing the Lee will. In support of her motion, Jones submitted a memorandum, the Lee will, a sworn affidavit from Lee, and the depositions of Hooks and Sloan. In opposition, Smith submitted the Hoefer will, Smith's deposition, and the deposition of Pam Jordan, Lee's paralegal, who was also Jones's daughter and the Testator's granddaughter.

On August 7, 2013, the circuit court held a hearing on the summary judgment motion. At the hearing, Smith informed the circuit court she had scheduled several depositions for

September 11, 2013, and asked the circuit court to grant a continuance and defer summary judgment until she had an opportunity to conduct them. Smith argued the depositions of several of the Testator's caregivers would demonstrate the Testator thought she was going to Lee's office to execute only a healthcare power of attorney and was taken there by Jones's daughter, Becky, "under the guise of a brunch." According to Smith, the evidence would show the Testator would not have allowed Lee to draft a will for her, because she believed Lee improperly handled the will of her deceased son, Wayne. Smith also contended the Testator did not realize she was executing a will, and the Testator told people the Hoefer Will was her will.

The circuit court rejected Smith's request for additional time to conduct depositions, orally granted Jones's summary judgment motion, and requested Jones prepare an order. The circuit court determined no genuine issue of material fact existed because no affidavits were submitted from caregivers or others demonstrating "there was some type of influence that overcame [the Testator's] will" when she executed the Lee Will.

On August 29, 2013, Smith filed a supplemental memorandum in opposition to summary judgement and an affidavit from her counsel concerning the need for a continuance. In the affidavit, Smith's counsel asserted summary judgement was premature because the parties had not had a full and fair opportunity to complete discovery. According to counsel, the parties initiated discovery as soon as the matter was filed and everyone involved had been diligent in prosecuting the case. Counsel stated the case was filed on April 1, 2013; the first round of depositions was held on May 1, 2013; the second round of depositions was held on May 17, 2013; and the third round of depositions was scheduled for September 11, 2013. Counsel explained that before the September 11, 2013 depositions, he "wanted to have an opportunity to thoroughly review the depositions taken in May and analyze the elements of proof, applicable law[,] and other issues prior to the next round of fact witness [depositions]." Counsel listed the testimony he expected the September 11, 2013 depositions to elicit and explained he expected the scheduled depositions to support Smith's fraudulent inducement claims.

On October 8, 2013, Smith submitted to the circuit court copies of the September 11, 2013 examinations under oath (EUOs) of Mary Alice Tompkins, Sharon Graham, Rachell Pringle, Janet Altman, Hoyt Leggette Smith, and Karen Deas McCall. With the EUOs, Smith's attorney submitted a letter explaining his client requested he depose the witnesses even though the circuit court granted Jones's summary judgment motion. The letter stated the EUOs supported the arguments Smith made at the summary judgment hearing. Jones objected to the EUOs.

On October 22, 2013, the circuit court signed a written order granting summary judgment to Jones and appointing Jones as PR of the Testator's estate. The written order states Jones offered Lee's affidavit and Sloan's and Hooks's depositions in opposition to the motion. The order does not mention the submission of the EUOs and does not say whether the circuit court considered the EUOs in rendering its decision. Smith filed a motion to reconsider which was denied. This appeal followed.

## STANDARD OF REVIEW

"In reviewing the grant of summary judgment motion, the [appellate court] applies the same standard as the trial court under Rule 56(c), SCRCP . . . ." *Dawkins v. Fields*, 354 S.C. 58, 69, 580 S.E.2d 433, 438–39 (2003). Rule 56(c) states summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law. Rule 56(c), SCRCP. "In determining whether any triable issue of fact exists, the evidence and all inferences which can *reasonably* be drawn therefrom must be viewed in the light most favorable to the nonmoving party." *Grimsley v. S.C. Law Enf't Div.*, 415 S.C. 33, 40, 780 S.E.2d 897, 900 (2015). "Even though courts are required to view the facts in the light most favorable to the nonmoving party, to survive a motion for summary judgment, 'it is not sufficient for a party to create an inference that is not reasonable or an issue of fact that is not genuine.'" *Id.* (quoting *Town of Hollywood v. Floyd*, 403 S.C. 466, 477, 744 S.E.2d 161, 166 (2013)). "The party seeking summary judgment has the burden of clearly establishing the absence of a

genuine issue of material fact." *Bennett v. Inv'rs Title Ins. Co.*, 370 S.C. 578, 588–89, 635 S.E.2d 649, 654 (Ct. App. 2006). If the moving party is successful, the nonmoving party must then come forward with specific facts showing there is a genuine issue for trial. *Id.*

**LAW/ANALYSIS**

■ Smith argues the circuit court erred in granting Jones's motion for summary judgment because genuine issues of material fact existed regarding the propriety of the making of the Lee will. We disagree.

■ "Generally, in cases where a will has been set aside for undue influence, there has been evidence either of threats, force, and/or restricted visitation, or of an existing fiduciary relationship." *Russell v. Wachovia Bank, N.A.*, 353 S.C. 208, 217, 578 S.E.2d 329, 333 (2003). "For a will to be invalidated for undue influence, the influence must be the kind of mental coercion which destroys the free agency of the creator and constrains him to do things which are against his free will, and that he would not have done if he had been left to his own judgment and volition." *Id.* "Where the testator has an unhampered opportunity to revoke a will or codicil subsequent to the operation of undue influence upon him, but does not change it, the court as a general rule considers the effect of undue influence destroyed." *Id.* at 217, 578 S.E.2d at 333–34. Furthermore, the "mere showing of opportunity or motive does not create an issue of fact regarding undue influence." *Wilson v. Dallas*, 403 S.C. 411, 437, 743 S.E.2d 746, 760 (2013).

No evidence in the record, including information contained in the EUOs, indicate the Testator was the victim of threats, force, or restricted visitation.[1] Smith indicated she was the primary caregiver for the Testator in October of 2011 as Jones was frequently busy caring for her young grandchildren. While our courts have found a parent and child may have a fiduciary relationship with one another, Jones was not with the Testator when she made the Lee Will and no allegations were made that Jones coerced the Testator or substituted her judgment for that of the Testator. Lee and Sloan both attest

---

1. Smith conceded at oral argument any additional discovery information she hoped obtain was essentially contained in the EUOs, which were before the court when summary judgment was granted.

to the Testator's willingness and capacity to execute the Lee will, and both attorneys indicate they met privately with the Testator when discussing her will. Additionally, Smith admits the Testator had the opportunity to change the Lee Will had she so desired. Accordingly, we conclude Jones demonstrated the absence of a genuine issue of material fact as to Smith's undue influence claim, and Smith failed to produce contrary evidence beyond mere allegations.

"To recover on a claim for fraud in the inducement, the plaintiff must show the defendant made a false representation relating to a present or preexisting fact, the defendant intended to deceive the plaintiff, and the plaintiff had a right to rely on the false representation." *Smith v. Hastie*, 367 S.C. 410, 416, 626 S.E.2d 13, 16 (Ct. App. 2005). "Similarly, the intent to deceive is an essential element of an action for fraud." *Id.*

Lee's affidavit indicates the Testator came to his office on October 18, 2011 to discuss her will. He asked the Testator to write down what she wanted in her will and to sign and date those notes. Her handwritten notes, attached to Lee's affidavit, indicate the Testator wanted her estate to be divided into sixths with one share going to each of her surviving children and one share to be divided between her grandsons, Jamie and Mikie. She also wrote her personal representative should be Judy Jones with Pam Jordan as a secondary alternate. These changes were made to the will previously on file with Lee's office and given back to the Testator for her to review with attorney Sloan. Sloan's handwritten notes from his meeting with the Testator, also attached to Lee's affidavit, indicate they discussed her medications, her deceased husband, the identity of her six children and her two grandsons, Jamie and Mikie. The notes also generally outline the larger items in her estate. The Testator signed the will before witnesses Sloan and Hooks.

Finally, Lee's office made some revisions, at the Testator's request, to a memorandum previously on file with them regarding the distribution of her personal property. She reviewed the changes and the memorandum is initialed by her on each page and signed and dated at the end, October 18, 2011.

Sloan's deposition reflects he met with the Testator on October 18 at Lee's request to review her will. The two of them sat in a room and went through the will paragraph by paragraph. Sloan testified she appeared competent and under no duress. Additionally, Sloan testified the Testator corrected his assumption that Jamie and Mikie were the children of her deceased son, Wayne. His notes reflect this information that Jamie and Mikie are the children of James Ervin Smith.

Smith submitted her deposition indicating the Testator had stated on numerous occasions that she would never use attorney Lee to prepare a will because she believed something about Wayne's will had been handled improperly. She also testified the Testator said she was a "nervous jerk" after having been to Lee's office and indicated she did not know what she had done or signed. Smith stated the Testator thought she was going to Lee's office to execute a healthcare power of attorney and was tricked into executing the Lee Will. Smith also stated the Testator called Lee's office to obtain a copy of the will but was never provided with one. The EUOs submitted by Smith essentially state the same or similar information.

The record demonstrates the Testator changed her will to provide for two of her grandchildren to whom she had been particularly close after their father's divorce. Smith admits this was something the Testator had considered doing in the past. Lee's affidavit and Sloan's testimony indicate the Testator knew and understood she was creating a will, not simply signing a healthcare power of attorney as Smith maintains. The Testator's handwritten notes from that day indicate creating a will was her desire and she desired to appoint Jones as her personal representative. Additionally, Sloan's notes reflect his discussion with her was about the distribution of her estate, not a healthcare power of attorney, she was competent, and she knew she was allotting one-sixth of her estate to Jamie and Mikie. Furthermore, Smith maintains the Testator disliked and distrusted Lee. Yet Smith maintains the Testator went to him for a healthcare power of attorney and not a will. If the Testator's dislike was so intense, it is illogical to believe she would go to him for either legal document.

The evidence presented by Jones regarding the propriety of the making of the Lee Will demonstrates the absence of a genuine issue of material fact as to Smith's fraudulent inducement claim. Against that backdrop, the inferences Smith asks us to draw are not reasonable and the alleged conduct or statements she relies upon do not create a *genuine* issue of material fact to support her fraudulent inducement claim.

Accordingly, we affirm the circuit court's grant of summary judgment in Jones's favor as to Smith's claims for undue influence and fraud in the inducement.[2]

**AFFIRMED.**

FEW, A.J., concurring in a separate opinion, and LOCKEMY, C.J., dissenting in a separate opinion.

FEW, A.J., concurring:

I concur in the majority opinion. I write separately to explain my position that the circuit court acted within its discretion to refuse to continue the summary judgment hearing to allow for additional discovery. The summary judgment order should also be affirmed on this basis.

Rule 56(f) of the South Carolina Rules of Civil Procedure provides parties an easy mechanism for notifying the circuit court in advance of a scheduled hearing of the party's need for additional time in which to complete discovery before defending a motion for summary judgment. Pursuant to Rule 56(f), the non-moving party or counsel may submit an affidavit stating the reasons "he cannot ... present by affidavit facts essential to justify his opposition" to the motion. In this case, Appellant did not comply with Rule 56(f).[3] When a party seeks

---

**2.** I decline to address Smith's argument regarding the prematurity of summary judgment based on a lack of time to complete discovery. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (declining to address remaining issues when decision regarding a prior issue is dispositive).

**3.** Rule 56(f) contemplates an affidavit will be filed at or before the hearing. *See Doe ex rel. Doe v. Batson*, 345 S.C. 316, 321, 548 S.E.2d 854, 856–57 (2001) ("disagree[ing] ... with the Court of Appeals' conclusion that the trial court abused its discretion in refusing to permit Doe's attorney to file Rule 56(f), SCRCP affidavits after the hearing" and stating, "Rule 56(f) requires the party opposing summary

additional time, but fails to comply with the Rule setting forth the procedure for requesting additional time, an appellate court should be very hesitant to say the trial court abused its discretion in denying the request.

When the defendants in *Baughman v. American Telephone and Telegraph Company* filed motions for summary judgment, the plaintiffs sought additional time to locate "a medical expert who could testify to the necessary degree of medical certainty." 306 S.C. 101, 104, 410 S.E.2d 537, 539 (1991). After the circuit court granted a motion for partial summary judgment as to medical causation, the plaintiffs submitted a letter from "a recently-discovered expert witness . . . in which she made a preliminary assessment of the case and recommended further study." 306 S.C. at 105, 410 S.E.2d at 539. The supreme court characterized a subsequent letter from the same expert as "highlight[ing] the need for further testing and analysis of Plaintiffs' medical conditions." 306 S.C. at 113, 410 S.E.2d at 544. In finding the circuit courts' order granting "partial summary judgment on the personal injury claims was premature," 306 S.C. at 112, 410 S.E.2d at 544, the supreme court made several other observations about *Baughman* that clearly distinguish it from this case. First, the court noted "the complexity of these cases" and that "proof of causation is especially difficult in actions seeking recovery for prolonged exposure to toxic substances." 306 S.C. at 113, 410 S.E.2d at 544. Second, relying on the defendants' exclusive possession of certain information, the court stated, "Plaintiffs had not yet received satisfactory responses to their interrogatories regarding the substances emitted from the Nassau plant, information critical to their obtaining expert opinion evidence concerning causation." *Id.* Finally, the court found, "Plaintiffs have demonstrated a likelihood that further discovery will uncover additional evidence relevant to the issue of medical causation." 306 S.C. at 112, 410 S.E.2d at 544.

In this case, on the other hand, the issues are simple, Appellant had within her control all of the information she needed to defend the motion, and the time requested for more

---

judgment to at least present affidavits explaining why he needs more time for discovery"). Here, Appellant filed an affidavit explaining why further discovery was needed more than three weeks *after* the summary judgment hearing.

discovery was not necessary to "uncover additional evidence," but rather only to document existing evidence. While there were depositions set for shortly after the hearing, it would have been a routine task for Appellant to obtain and file affidavits from the same witnesses setting forth the evidence Appellant wished to present in defense of the motion. Nevertheless, Appellant chose to proceed in the hope the circuit court would not enforce the Rules of Civil Procedure. The Rules, however, are designed to be enforced, *Ex parte Wilson*, 367 S.C. 7, 15, 625 S.E.2d 205, 209 (2005) ("If a rule's language is plain, unambiguous, and conveys a clear meaning, ... the stated meaning should be enforced."), and we have repeatedly stated we allow trial judges the discretion in which to do so, *see, e.g., Fairchild v. S.C. Dep't of Transp.*, 398 S.C. 90, 108, 727 S.E.2d 407, 416 (2012) ("A trial court's rulings in matters related to discovery generally will not be disturbed on appeal in the absence of a clear abuse of discretion.").

The circuit court correctly enforced a plainly-written rule, and therefore, its decision to deny additional time in which to complete discovery was within its discretion.

LOCKEMY, C.J., dissenting:

I respectfully dissent and would reverse the order granting summary judgment and remand this case for trial on both issues.

"A motion for a continuance is addressed to the sound discretion of the trial [court], whose judgment will be reversed only on showing an abuse of discretion." *Crout v. S.C. Nat. Bank*, 278 S.C. 120, 123, 293 S.E.2d 422, 423 (1982).

"Since it is a drastic remedy, summary judgment 'should be cautiously invoked so that no person will be improperly deprived of a trial of the disputed factual issues.'" *Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 112, 410 S.E.2d 537, 543 (1991) (quoting *Watson v. Southern Ry. Co.*, 420 F.Supp. 483, 486 (D.S.C.1975)). "This means, among other things, that summary judgment must not be granted until the opposing party has had a full and fair opportunity to complete discovery." *Id.; see also Robertson v. First Union Nat. Bank*, 350 S.C. 339, 346–47, 565 S.E.2d 309, 313 (Ct. App. 2002) ("Generally, it is not premature for the trial court to grant summary

judgment after all relevant parties have been deposed because the litigants have had a full and fair opportunity to develop the record in the case."). "The non-moving party in a motion for summary judgment must demonstrate the likelihood that further discovery will uncover additional relevant evidence and that the party is not merely engaged in a fishing expedition." *Schmidt v. Courtney*, 357 S.C. 310, 322, 592 S.E.2d 326, 333 (Ct. App. 2003) (internal quotation marks omitted).

> Should it appear from the affidavits of a party opposing the [summary judgment] motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.

Rule 56(f), SCRCP. "Rule 56(f) requires the party opposing summary judgment to at least present affidavits explaining why he needs more time for discovery. The rule does not apply in the situation ... where no affidavits [are] filed whatsoever." *Doe ex rel. Doe v. Batson*, 345 S.C. 316, 321, 548 S.E.2d 854, 857 (2001); *but see Baughman*, 306 S.C. at 112 n.4, 410 S.E.2d at 544 n.4 (stating although the plaintiffs "did not file an affidavit invoking [Rule 56(f)], other courts have not mandated strict compliance with the technical requirements of Rule 56(f) where ... the need for further discovery is otherwise made known to the trial court").

Our appellate courts have indicated a trial court should deny a request for further discovery before granting summary judgment where the request came a year or more after the case was filed, where the request came after the expiration of the discovery deadline, or where the opposing party failed to demonstrate further discovery would create a genuine issue of material fact. *See e.g., Guinan v. Tenet Healthsystems of Hilton Head, Inc.*, 383 S.C. 48, 55, 677 S.E.2d 32, 36 (Ct. App. 2009) (finding the trial court did not err in hearing the defendants' summary judgment motion because the discovery deadlines had expired and the plaintiff was afforded a full and fair opportunity to conduct discovery; and noting the plaintiff failed to demonstrate further discovery would uncover additional relevant evidence or create a genuine issue of material fact); *CEL Products, LLC v. Rozelle*, 357 S.C. 125, 131, 591

S.E.2d 643, 646 (Ct. App. 2004) (finding the plaintiff was not entitled to further discovery before the trial court granted summary judgment to the defendant where the plaintiff failed to demonstrate further discovery would be beneficial, the case was approximately twenty-one months old when the defendant filed its summary judgment motion, and the plaintiff's ability to sustain her claims should not have hinged upon speculative deposition evidence that might be obtained).

However, the *Batson* court held the circuit court abused its discretion by granting summary judgment before the plaintiff had a full and fair opportunity to complete discovery. 345 S.C. at 322, 548 S.E.2d at 857. In *Batson*, the parent of a child who was sexually molested filed a lawsuit against the child's abuser and the abuser's mother. *Id.* at 318, 548 S.E.2d at 855. In determining the trial court abused its discretion, our supreme court noted the plaintiff was not dilatory in pursuing discovery; several depositions—including the depositions of the abuser and his mother—were scheduled for the week following the hearing; and even though the delay was not attributable to the defendant, it was not solely attributable to the plaintiff. *Id.* at 322, 548 S.E.2d at 857.

I would find the circuit court abused its discretion by denying Smith's motion for a continuance and prematurely granting summary judgment to Jones in its first and only order in this case. Although I recognize the circuit court had discretion to grant or deny the motion for a continuance, I believe the court should have given Smith time to conduct the depositions scheduled the month after the date of the hearing. The circuit court granted summary judgment to Jones merely five months after the case was filed, three months after the case was removed from the probate court, and two months after Jones filed her summary judgment motion. Further, nothing in the record suggests that a scheduling order was in place, that the circuit court previously ordered the parties to complete discovery within a certain time period, or that the circuit court had granted discovery extensions.

In addition, Smith's counsel explained further discovery would show the existence of a genuine issue of material fact, and he submitted a Rule 56(f) affidavit explaining the need for further discovery. In the affidavit, Smith's counsel asserted

summary judgment was premature because the parties had not had a full and fair opportunity to complete discovery, the parties initiated discovery as soon as the matter was filed, and everyone involved had been diligent in prosecuting the case. Counsel explained the case was filed on April 1, 2013; the first round of depositions was held on May 1, 2013; the second round of depositions was held on May 17, 2013; and the third round of depositions was scheduled for September 11, 2013. Counsel stated he wanted an opportunity to thoroughly review the May depositions and analyze the applicable law before conducting the September 11, 2013 depositions. In the affidavit, Smith's counsel stated he expected the witnesses' testimony to support Smith's claims, and he listed the testimony he expected the depositions to elicit.

Like the plaintiff in *Batson*, Smith was not dilatory in pursuing discovery. Also, as in *Batson*, the depositions of several witnesses—including the Testator's caregivers—were scheduled to be conducted soon after the summary judgment hearing. Neither of these two facts is disputed. Accordingly, I believe Smith demonstrated she did not have a full and fair opportunity for discovery and the circuit court abused its discretion by denying her motion for a continuance and prematurely granting summary judgment to Jones.