753 S.E.2d 428

**Larius G. WOODSON and Maurissa Woodson, Petitioners,**

**v.**

**DLI PROPERTIES, LLC, Allen Tate Co., Inc., Melia C. Faile and Alan L. Cauthen, Defendants,**

**Of whom Allen Tate Co. and Melia C. Faile, are Respondents.**

Appellate Case No. 2011–198286.

No. 27344.

Supreme Court of South Carolina.

Heard Oct. 16, 2013.
Decided Jan. 8, 2014.

518

520

John Martin Foster, of Rock Hill, for Petitioners.

Thomas Lynn Ogburn, III, of Poyner Spruill, LLP, of Charlotte, North Carolina, for Respondents.

Chief Justice TOAL.

Larius and Maurissa Woodson (Petitioners) appeal the circuit court's decision granting summary judgment in favor of Allen Tate Co. (Allen Tate) and Melia Faile (collectively, Respondents). The court of appeals affirmed. We affirm the court of appeals' decision as modified.

## FACTS/PROCEDURAL BACKGROUND

In 2006, DLI Properties, LLC (DLI), hired Allen Tate, a real estate brokerage firm, and Faile, Allen Tate's licensee, to serve as its agents in connection with the sale of certain real property in Lancaster, South Carolina (the property). Petitioners, using Sharon Davis of Davis Integrity Realty, Inc. as their broker, offered to purchase the property.[1]

On August 1, 2006, at Petitioners' request, Faile sent Petitioners a draft form of an "Agreement to Buy and Sell Real Estate" (the offer). Upon receiving the offer, Petitioners made changes to several terms, initialed the changes, signed the offer, and returned it to Faile on August 3, for consideration by DLI. That same day, DLI made material changes to the offer, initialed those changes, signed the offer, and Faile returned it to Petitioners for consideration and approval. At some point later that day, after receiving the offer from Petitioners with initials to only some of DLI's changes, Faile faxed Davis the offer with the signatures and stated in the fax cover sheet that Petitioners needed to initial a few more items to finalize the offer. On Friday, August 4, Petitioner Larius

---

1. Although Davis acted as Petitioners' agent, she was absent during relevant portions of the real estate transaction. Therefore, at times, Petitioners communicated directly with Faile.

Woodson (Larius) called Faile and explained he forgot to include in the offer a $4,300 limit on the cost of tapping into the existing water and sewer system (tap fee), which was a contingency term of the offer. Faile told Larius she would discuss the tap fee with DLI, but was unsure whether DLI would accept the change.

After Faile discussed the tap fee with a DLI representative, Faile telephoned Larius and left a voice message at 5:00 p.m. on August 4, stating DLI agreed to the change and directing Larius to notate the change, initial it, and deliver the offer to her with a check for the $1,000 earnest money deposit. Petitioners inserted the tap fee term, and initialed that change as well as DLI's changes. On Saturday, August 5, Petitioners delivered the offer to Faile's office with a check for the earnest money. Around 3:00 p.m. that day, Faile picked up the offer and check from her office and called DLI to finalize the offer; however, because some of DLI's partners were out of town and therefore unable to sign the tap fee change, they agreed to meet on Monday, August 7, to finalize the agreement.

On Sunday, August 6, Alan Cauthen contacted Faile through his real estate agent about making an offer on the property. Faile informed Cauthen's agent that DLI was considering another offer, but DLI had not finalized that offer yet. The agent requested Faile to fax over details about the property. Approximately four hours later, Cauthen's agent indicated Cauthen was very interested in the property and wanted to make a cash offer with an earlier closing date, but Cauthen was concerned with the septic and indicated he wanted an inspection. The inspection occurred on August 8, with Cauthen and his agent present. After the inspection, Cauthen informed Faile he wanted to make an offer, and Faile stated the offer must guarantee an earlier closing date and a $5,000 earnest money deposit.

In the meantime, on Monday, August 7, Faile informed DLI about Cauthen's offer. Faile also asked DLI whether she should inform Petitioners about Cauthen's offer. DLI instructed Faile not to inform Petitioners after Faile told DLI that she was afraid that, if she informed Petitioners about the other offer, DLI could lose both offers.

On Wednesday, August 9, Cauthen delivered a formal written offer to purchase the property. DLI accepted Cauthen's offer, and the parties executed the agreement that afternoon. After the agreement's execution, Faile called Davis and informed her that DLI had accepted another offer, which contained no contingencies and an earlier closing date. Petitioners subsequently filed a lis pendens on the property in the amount of $3,000.

On October 27, 2006, Petitioners commenced the current action against Respondents alleging fraud, negligent misrepresentation, and violations of the South Carolina Unfair Trade Practices Act (the SCUTPA)[2] based on DLI's acceptance of Cauthen's offer and Faile's representation that DLI would accept Petitioner's offer.[3] Petitioners claimed Respondents made misrepresentations concerning the validity and effectiveness of their agreement to purchase the property. Petitioners asserted Respondents had a duty of care to communicate truthful information to Petitioners, and breached that duty by failing to disclose the Cauthen offer and the fact that DLI had not signed Petitioners' offer. Petitioners further alleged Respondents demonstrated a pattern of behavior sufficient to establish a SCUTPA violation.

In his deposition, Larius testified he understood the tap fee's exclusion was a mistake on his part, which he realized on Friday, August 4, and he merely sought to enforce the contract for sale he and DLI originally negotiated. Larius stated he knew DLI planned to sign the tap fee change, but he was unaware that DLI's signature to the tap fee change was necessary to render the agreement valid and enforceable. Larius testified he sought to close on the land and receive reimbursement for expenses, estimated at $3,000, that he incurred between the time Petitioners changed the offer until DLI's rejection of the offer, which was the period between Saturday, August 5, through Wednesday, August 9.[4]

---

2. S.C.Code Ann. §§ 39–5–10 to –560 (1985 & Supp.2012).

3. Petitioners made the claims against Respondents in the alternative to their claims against DLI.

4. In his deposition, Larius admitted he had no documentation to support the $3,000 claim for damages; instead, he asserted that

Faile testified that she believed Petitioners and DLI reached an agreement *before* Petitioners requested the inclusion of the tap fee. However, she testified that, prior to this change, she contacted Davis to inform her that the offer still required Petitioners' initials to ensure the validity of the agreement. Faile acknowledged that DLI would have accepted the offer with the tap fee and that she confirmed this with Larius in a voicemail. However, Faile also testified she believed the transaction was not complete until DLI initialed the tap fee change. She further testified that she felt the offer contained enough contingency terms, and that the tap fee would be an easy way for Petitioners to cancel the deal because the actual tap fee cost would likely be more than the $4,300 contingency. Additionally, Faile testified that she was ethically obligated to bring all potential offers, including Cauthen's offer, to DLI after Petitioners delivered their offer to her, because DLI had not yet signed Petitioners' offer containing the tap fee change.

On March 26, 2008, Respondents filed a motion for summary judgment.[5] On July 13, 2008, after a hearing on July 7, the circuit court entered an order granting Respondents' motion for summary judgment, stating:

Based upon the arguments of counsel, and upon consideration of the motion for summary judgment, the pleadings, affidavits, deposition, transcripts, discovery responses and other documents on file and the briefs filed by the parties, the Court determines that there are no genuine issues of

---

amount was the value of his time spent on the deal and gas consumed over the course of approximately four days in which he thought the agreement was valid.

5. Respondents argued Faile's deposition was evidence that Faile did not promulgate false or misleading information because at all times that she communicated with Larius, Faile believed she was providing truthful information. Respondents also argued Petitioners could not establish the necessary elements for their SCUTPA claims because there was no evidence Respondents engaged in an unfair or deceptive act in the conduct of trade or commerce. Respondents further contended that Petitioners could not establish the alleged unfair or deceptive acts affected the public interest because Petitioners merely suffered a private harm that was not capable of repetition or threatening to the consumer public. Finally, Respondents argued they were entitled to summary judgment because Petitioners were unable to articulate any actual damages incurred by them.

material fact, and [Respondents] are entitled to judgment as a matter of law on all claims against them contained in the Complaint, pursuant to Rule 56 of the South Carolina Rules of Civil Procedure.

Petitioners appealed. The court of appeals affirmed the circuit court, finding Petitioners failed to satisfy their burden of providing a sufficient record. *See Woodson v. DLI Props.,* Op. No. 2011–UP–291 (S.C.Ct.App. filed June 14, 2011). The court of appeals concluded it could not determine whether summary judgment was appropriate because the circuit court's order failed to articulate its reasons for granting summary judgment. *Id.* The court of appeals noted that, ordinarily, under *Bowen v. Lee Process Systems Co.,* 342 S.C. 232, 536 S.E.2d 86 (Ct.App.2000), it would vacate the circuit court's grant of summary judgment and remand the case for more specific findings and analysis. *Id.* However, relying in part on Rule 210(h), SCACR,[6] the court of appeals declined to do so "because the trial court *might* have articulated its decision during the summary judgment hearing and [Petitioners] failed to provide a hearing transcript." *Id.* (emphasis added).

## ISSUES PRESENTED

I. Whether the court of appeals erred in affirming the circuit court on the basis that Petitioners failed to provide a sufficient record for review.

II. Whether the circuit court erred in granting summary judgment in favor of Respondents.

## ANALYSIS

## I. Sufficient Record

 Petitioners argue that a judgment is effective only when set forth in a written order, and if there is a conflict between a court's oral ruling and written order, the written

---

6. Rule 210(h), SCACR, provides that "the appellate court will not consider any fact which does not appear in the Record on Appeal." The court of appeals also relied on *Price v. Pickens County,* 308 S.C. 64, 67, 416 S.E.2d 666, 668 (Ct.App.1992), which provides, "[t]he burden is on the appellant to provide a sufficient record such that this court can make an intelligent review."

order controls. Therefore, Petitioners argue, what the circuit court "might" have stated during the hearing is irrelevant to whether the motion for summary judgment should have been granted because such statements would not have been controlling of the outcome. Petitioners further contend, because all memoranda, affidavits, and other evidence presented to the circuit court were included in the Record before the court of appeals, and that evidence is the basis upon which the circuit court made its decision, there is no requirement to include the hearing transcript.[7]

We agree that the court of appeals erred in affirming the circuit court's grant of summary judgment on the basis that Petitioners failed to provide a sufficient record.

■ The court of appeals, relying on *Bowen,* stated it would have vacated and remanded the case to the circuit court to articulate its reasons for granting summary judgment if Petitioners had provided a sufficient record. In *Bowen,* the court of appeals vacated the trial judge's grant of summary judgment because the order was a cursory form order. The court remanded for a written order identifying the facts and accompanying legal analysis upon which the judge relied because, based on the record, the court of appeals determined the propriety of the summary judgment was a rather close question. *Bowen,* 342 S.C. at 240–41, 536 S.E.2d at 90–91.[8] We

---

7. Respondents concede the supporting documents containing the facts and legal arguments on which the circuit court relied upon and identified in the order were included in the Record before the court of appeals. Therefore, Respondents submit, the court of appeals did have sufficient information to permit meaningful appellate review of the merits of Petitioners' arguments.

8. We note the court of appeals' application of the *Bowen* standard is somewhat inconsistent. *Compare B & B Liquors, Inc. v. O'Neil,* 361 S.C. 267, 271, 603 S.E.2d 629, 631–32 (Ct.App.2004) (vacating a form order granting summary judgment and remanding the case to the trial judge for entry of a written order identifying the facts and legal analysis upon which it relied in granting summary judgment), *and Carey v. Snee Farm Cmty. Found.,* 388 S.C. 229, 230, 232, 694 S.E.2d 244, 245–46 (Ct.App.2010) (finding the trial judge's reasoning for granting summary judgment was not clear from the record where the trial judge's decision was in a form order without any stated grounds for his decision), *with Porter v. Labor Depot,* 372 S.C. 560, 568, 643 S.E.2d 96, 100 (Ct.App. 2007) (stating that not all circumstances require a detailed order if the appellate court can determine the basis of the trial judge's ruling from

agree it is better practice—and in most cases common practice—as well as beneficial to the judicial process for a trial judge to articulate relevant findings and conclusions of law in an order granting summary judgment. However, Rule 52, SCRCP, provides that "[f]indings of facts and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56. . . ." Thus, such findings and conclusions are not required for appellate review, and, for this reason, we overrule *Bowen* to the extent it is relied upon to vacate and remand orders granting summary judgment. Nevertheless, here, the circuit court's reasoning is clear from the order, as it plainly referenced the evidence the circuit court considered in making its decision. *See Porter*, 372 S.C. at 568, 643 S.E.2d at 100 (stating that "not all situations require a detailed order, and the circuit court's form order may be sufficient if the appellate court can ascertain the basis for the circuit court's ruling from the record on appeal").

Further, a decision on a motion for summary judgment is based on depositions, interrogatories, affidavits, and other evidentiary material provided by the parties. *See* Rule 56(c), SCRCP; *see also Quail Hill, L.L.C. v. Cnty. of Richland*, 387 S.C. 223, 234, 692 S.E.2d 499, 505 (2010) (stating appellate courts apply the same standard as the trial court under Rule 56(c), SCRCP). Here, Petitioners provided the requisite evidentiary material to the court of appeals. Therefore, we find the court of appeals did have a sufficient record before it to permit meaningful appellate review and make a decision on the merits. *See Quail Hill*, 387 S.C. at 234, 692 S.E.2d at 505; *Hamilton v. Greyhound Lines E.*, 281 S.C. 442, 444, 316 S.E.2d 368, 369 (1984) (stating the appealing party has the burden of providing a sufficient record such that the appellate court can make an intelligent review).[9]

---

the record on appeal), *Clark v. S.C. Dep't of Pub. Safety*, 353 S.C. 291, 311–12, 578 S.E.2d 16, 26 (Ct.App.2002), *aff'd* 362 S.C.377, 608 S.E. 2d 573 (2005) (finding *Bowen* distinguishable because the trial judge's reasoning for denial of post-trial motions could be determined from the record on appeal), *and Inglese v. Beal*, 403 S.C. 290, 307–08, 742 S.E.2d 687, 696 (Ct.App.2013) (Pieper, J., dissenting) (noting the majority affirmed the trial judge's Form 4 order which simply stated "Defendant [ ] Beal's motion for summary judgment is granted").

9. Moreover, the court of appeals' reliance on Rule 210(h), SCACR, is misplaced. All of the facts were included in the Record on Appeal

■ Additionally, what the circuit court "might" have stated during the hearing on the motion for summary judgment is irrelevant, as a written order constitutes a final order and final judgment of the lower court. *See Ford v. State Ethics Comm'n*, 344 S.C. 642, 645–646, 545 S.E.2d 821, 823 (2001) (citing Rule 58, SCRCP) (stating "the written order is the trial judge's final order and as such constitutes the final judgment of the court"); *see also Hagood v. Sommerville*, 362 S.C. 191, 194, 607 S.E.2d 707, 708 (2005) (citing S.C.Code Ann. § 14–3–330(1) (1976); Rule 72, SCRCP; Rule 201(a), SCACR; *Mid-State Distribs., Inc. v. Century Imps., Inc.*, 310 S.C. 330, 335, 426 S.E.2d 777, 781 (1993)) ("An appeal ordinarily may be pursued only after a party has obtained a final judgment."). In the presence of a written order, the court of appeals erred in affirming summary judgment on the basis that Petitioners did not provide the hearing transcript as part of the Record. *See Ford*, 344 S.C. at 645–646, 545 S.E.2d at 823; *see also* Rule 56(c), SCRCP (listing the factual material that is reviewable for purposes of deciding whether to grant a motion for summary judgment).

## II. The Merits[10]

■ In reviewing a grant of summary judgment, our appellate court applies the same standard as the trial court under Rule 56(c), SCRCP. *Quail Hill*, 387 S.C. at 234, 692 S.E.2d at 505. Summary judgment is proper if, viewing the evidence and inferences to be drawn therefrom in a light most favorable to the nonmoving party, the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), SCRCP; *Quail Hill*, 387 S.C. at 235, 692 S.E.2d at 505.

---

before the court of appeals; thus, the hearing transcript was not necessary for the purposes of appellate review.

10. While remand to the court of appeals is appropriate, in the interest of judicial economy, we address the merits of whether summary judgment in favor of Respondents was proper. *Furtick v. S.C. Dep't of Prob., Parole & Pardon Servs.*, 352 S.C. 594, 599, 576 S.E.2d 146, 149 (2003) (addressing the merits of a claim in the interest of judicial economy despite the respondent being entitled to review by the lower court).

■ Petitioners contend they presented sufficient evidence of fraud to withstand summary judgment. Petitioners, relying on section 40–57–137 of the South Carolina Code, argue Respondents had a duty to disclose Cauthen's offer and the fact that DLI had not yet finalized Petitioners' offer. Petitioners contend this duty arises because they had "the right to expressly repose trust and confidence" in Respondents with regard to the offer to purchase the property. *See* S.C.Code Ann. § 40–57–137 (2011); *Jacobson v. Yaschik*, 249 S.C. 577, 585, 155 S.E.2d 601, 605 (1967) (stating one of the three distinct classes upon which a duty to disclose arises includes when one party expressly reposes a trust and confidence in the other in a particular transaction, or the circumstances of that transaction or the nature of the parties' dealings imply such a trust and confidence). Petitioners also contend Respondents' actions and inactions constituted unfair trade practices under the SCUTPA. We disagree.[11]

In reviewing the circuit court's order and the Record, we find the facts—which are uncontested—and the law support summary judgment in favor of Respondents. *See Lanham v. Blue Cross & Blue Shield of S.C., Inc.*, 349 S.C. 356, 361, 563 S.E.2d 331, 333 (2002) (citation omitted) (stating the moving party has the initial burden of demonstrating the absence of a genuine issue of material fact; however, with respect to an issue upon which the nonmoving party has the burden of proof, the moving party may discharge his responsibility by pointing out to the trial judge there is an absence of evidence to support the nonmoving party's case); *Evans v. Stewart*, 370 S.C. 522, 526, 636 S.E.2d 632, 635 (Ct.App.2006) (stating it is not sufficient for a party to create an inference that is not reasonable or an issue of fact that is not genuine); *see also* Rule 56(e), SCRCP (stating an adverse party may not rest upon the mere allegations or denials of his pleadings to withstand summary judgment, but must set forth specific facts showing a genuine issue exists for trial).

11. We find Petitioners have abandoned the negligent misrepresentation claim by failing to set forth an argument on the issue in their brief. *See* Rule 208(b), SCACR (stating that, for appellate review of an issue to occur, the issue must be set forth in a statement and argument); *Biales v. Young*, 315 S.C. 166, 168, 432 S.E.2d 482, 484 (1993) (stating that a party's failure to argue an issue constitutes abandonment of the issue and precludes consideration on appeal).

 Petitioners were not clients of Respondents; rather, Petitioners employed Davis to represent them in the transaction, and the circumstances of Petitioners' dealings with Respondents did not imply a "trust and confidence" between the parties giving rise to a duty to disclose another offer. *See* S.C.Code Ann. §§ 40–57–135, –137 (2011) (outlining the duties owed by a real estate brokerage firm and a real estate agent);[12] *Holly Hill Lumber Co. v. McCoy,* 201 S.C. 427, 437, 23 S.E.2d 372, 376 (1942) ("Nondisclosure becomes fraudulent only when it is the duty of the party having knowledge of the facts to uncover them to the other."); *see also Houck v. State Farm Fire & Cas. Ins. Co.,* 366 S.C. 7, 11, 620 S.E.2d 326, 329 (2005) (stating it is a question of law whether a duty exists); *Jacobson,* 249 S.C. at 585, 155 S.E.2d at 605 (providing the three distinct classes upon which a duty to disclose arises). Therefore, the circuit court properly granted summary judgment in favor of Respondents on the fraud claims. *See* Rule 56(c), SCRCP; *Turner v. Milliman,* 392 S.C. 116, 125, 708 S.E.2d 766, 770 (2011) (citation omitted) (stating a fraud claim requires proof by clear and convincing evidence).

 As to Petitioners' unfair trade practices claims, the SCUTPA is not available to redress a private wrong because an unfair or deceptive act that affects only the parties to the transaction is beyond the scope of the SCUTPA. *Noack Enters., Inc. v. Country Corner Interiors of Hilton Head Island, Inc.,* 290 S.C. 475, 478–480, 351 S.E.2d 347, 349–351 (Ct.App.1986). Here, the transaction only affected Petitioners, DLI, and Respondents, and therefore, Respondents' actions or inactions are not actionable under the SCUTPA, and Petitioners failed to present any evidence to the contrary. *Id.; see also Health Promotion Specialists, L.L.C. v. S.C. Bd. of Dentistry,* 403 S.C. 623, 638, 743 S.E.2d 808, 816 (2013) (citation omitted) (stating to recover in an action under the SCUTPA, "the plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected the public interest; and (3) the plaintiff suffered monetary or property

---

12. Specifically, section 40–57–137, in part, provides that a seller's real estate agent owes a duty to present all offers to the seller, even when the property is subject to a contract of sale. S.C.Code Ann. § 40–57–137(C)(2)(b).

loss as a result of the defendant's unfair or deceptive act(s)"). Therefore, we find the circuit court properly granted summary judgment in favor of Respondents on the SCUTPA claims as well.

██ Furthermore, Petitioners' allegation that they suffered $3,000 in actual damages is purely speculative and, therefore, not recoverable, which we find further supports summary judgment in favor of Respondents. Larius admitted in his deposition that he estimated the $3,000 in damages based on the time and gas he spent on the deal between August 5 and 9. He further admitted that he could not substantiate that number because he "had no clue" of the actual amount of hours or gas, and simply stated the amount was the value for one week of his time. *See* S.C.Code Ann. § 39–5–140(a) (1985) (providing the SCUTPA allows for the recovery of actual damages); *Fields v. Yarborough Ford, Inc.*, 307 S.C. 207, 212 n. 2, 414 S.E.2d 164, 167 n. 2 (1992) (finding the alleged damages speculative where plaintiff admitted he did not actually know if he spent more money on gas as a result of the defendant's deceptive act of nondisclosure that the truck plaintiff purchased had a larger size engine than defendant stated); *Baughman v. AT & T Co.*, 306 S.C. 101, 116, 410 S.E.2d 537, 546 (1991) (citations omitted) ("[I]n order for damages to be recoverable the evidence should be such as to enable the court or jury to determine the amount thereof with reasonable certainty or accuracy. Neither the existence, causation nor amount of damages can be left to conjecture, guess or speculation."); *see also* Michael G. Sullivan & Douglas S. MacGregor, *Elements of Civil Causes of Action* 148 (4th ed. 2009) (citations omitted) ("The plaintiff must show the injury clearly, and the damages must not be excessively speculative.").

## CONCLUSION

The court of appeals erred by not addressing the merits of Petitioners' appeal. However, on the merits, we affirm the circuit court's decision granting summary judgment in favor of Respondents. Accordingly, the court of appeals' decision is

**AFFIRMED AS MODIFIED.**

BEATTY, KITTREDGE and HEARN, JJ., concur.

PLEICONES, J., concurring in result only.