**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

C. Barry Dykes and Barbara Eisenhardt, Individually and Derivatively On Behalf Of The Wild Wing Plantation Property Owners' Association, Inc., Appellants,

v.

Wild Wing Company, LLC; Sunstar, LLC; Ralph R. Teal, Jr.; SLF IV/SBI Wild Wing, LLC; SLF IV/SBI JV, LLC; SLF IV/SBI Properties MM LLC; SLF IV/SBI Development Holdings, LLC; Wild Wing Residential Development, LLC; Stratford Land Manager, L.P. d/b/a Stratford Land; Stratford Land Fund IV , L.P.; SB Investments LLC; Realstar Management, LLC; Graeme T. Black; H. Gilford Edwards; Founders Wild Wing, LLC; Founders Group International, LLC; Dan Liu; Xian "Nick" Dou; Rick Schultz; Rick Taylor and Thomas Plankers, Respondents,

Wild Wing Plantation Owners' Association, Inc., Nominal Defendant.

Appellate Case No. 2021-000767

———————

Appeal From Horry County
R. Markley Dennis, Jr., Circuit Court Judge

———————

Unpublished Opinion No. 2025-UP-299
Submitted February 1, 2025 – Filed August 20, 2025

———————

**AFFIRMED**

---

Robert T. Lyles, Jr., of Lyles & Associates, LLC, of Sullivan's Island, for Appellants.

William Douglas Smith, of Johnson Smith Hibbard & Wildman, LLP, and Scott Franklin Talley, of Talley Law Firm, P.A., both of Spartanburg, for Respondents Stratford Land Manager, L.P. and Stratford Land Fund IV, L.P.

Eugene Hamilton Matthews and C. Cliff Rollins, both of Richardson Plowden & Robinson, PA, of Columbia, for Respondents Rick Schultz, Thomas Plankers, and Rick Taylor.

David B. Miller and Zachary James Crowl, both of Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, P.A., of Myrtle Beach, for Respondents Wild Wing Company, LLC; Sunstar, LLC; SLF IV/SBI Wild Wing, LLC; SLF IV/SBI JV, LLC; SLF IV/SBI Properties MM, LLC; SLF IV/SBI Development Holdings, LLC; Wild Wing Residential Development, LLC; SB Investments, LLC; Realstar Management, LLC; Founders Wild Wing, LLC; Founders Group International, LLC; and Dan Liu.

Douglas Walker MacKelcan, III, and Skyler Cole Wilson, both of Copeland, Stair, Valz & Lovell, LLP, of Charleston; and William Joseph Farley, III, of Troutman Pepper Locke LLP of Charlotte, North Carolina, all for Respondents Ralph R. Teal, Jr., Graeme T. Black, and H. Gilford Edwards.

---

**PER CURIAM:** In this derivative action filed by Barry Dykes and Barbara Eisenhardt (collectively, Representatives) on behalf of the Wild Wing Plantation Property Owners' Association (the Association), Representatives appeal the circuit court's orders granting summary judgment in favor of various current and former

corporate owners of the Wild Wing Plantation (Wild Wing) development and current and former members of the Board of Directors (Board) of the Association. We affirm.

Wild Wing is a residential golf development in Conway, South Carolina. The Association was created in 2006 as a nonprofit corporation and subsequently filed a "Declaration of Protective Covenants, Restrictions, Easements, Charges, and Liens" (Covenants). The Association, in turn, is subject to both the Covenants and its bylaws (Bylaws). The Bylaws state the Association must be governed by the Board, and the Covenants and Bylaws create a number of rights and obligations for the owner of the development (Declarant), including the right to name all members of the Association's Board.

The first Declarant, Wild Wing Company, LLC (WWC), was organized in 2006. WWC appointed Ralph Teal and H. Gilford Edwards to the Board. In 2010, the National Bank of South Carolina (NBSC) threatened foreclosure. WWC joined with a new investor, Stratford Land Fund IV, L.P. (Stratford), to form the second declarant, SLF IV/SBI Wild Wing, LLC (SLF).

WWC then assigned its declarant rights to SLF on December 22, 2010.[1] SLF appointed Teal, Edwards, and Graeme Black to the Board. In 2011, a separate entity, Wild Wing Residential Development LLC (WW Residential), was created to oversee the development of the community, while SLF managed the golf course.

SLF assigned its declarant rights to WW Residential, the third declarant, on November 9, 2011. Teal, Edwards, and Black continued to serve on the Board. Finally, WW Residential assigned its declarant rights to Founders Wild Wing, LLC (Founders) on April 13, 2015, and Founders is the current Declarant.[2] Founders appointed Rick Shultz, Rick Taylor, and Tom Plankers—all employees—to the Board.[3]

---

[1] The structure and management of SLF is convoluted, involving multiple different entities including Stratford, SLF IV/SBI Properties MM, LLC (SBI Properties), SLF IV/SBI JV (SBI JV), SB Investments, LLC (SBI), and Realstar Management, LLC (Realstar). SBI Properties and SBI JV were both managed by Stratford and SBI, which in turn were managed by Teal, one of the original Board members. Edwards and Black were employees of Realstar.

[2] Xian Dou and Dan Liu are the owners of Founders.

[3] Plankers and Taylor remained on the Board until 2017 after they both left Founders' employment; Shultz was still on the Board at the time of the hearing.

Each Declarant owned all unsold lots located within Wild Wing during its tenure. Further, the Declarant has superior voting rights as compared to the non-Declarant property owners. The Covenants give the Declarant voting rights equal to twice the number of non-Declarant property owner votes plus one, essentially ensuring the Declarant has control of any vote requiring 67% of votes or less. Amending the Covenants requires a 67% vote of the members of the Association.

Under the Covenants, the Association has a right to levy assessments on property owners within the development. The Covenants require the Declarant, as the owner of the unsold lots, to pay any such annual and special assessments. However, the Covenants also allow the Declarant an option for a "funding alternative"; it may either pay (1) a single annual assessment of "a sum equal to the actual amount of actual operating expenditures incurred by the Association for that portion of the calendar year less an amount equal to the total assessments made by the Association against [o]wners of [l]ots other than those owned by the Declarant" or (2) a per-lot assessment. In other words, the Declarant's minimum annual obligation is to "fund any shortfall between the Association's actual operating expenditures and the assessments made against all other owners during that year."

The funding option was originally set to expire on December 31, 2010. On November 9, 2011, the Board notified all members of the Association of a special meeting to vote on an amendment to the Covenants that, among other things, retroactively extend the Declarant's funding option deadline from December 31, 2010 to December 31, 2016 (2011 Amendment). A special meeting was held on November 21, 2011, and the Association's members, including Eisenhardt, voted unanimously in favor of the amendment.[4]

In 2012, the Board created a Finance Committee consisting solely of lot owners; Eisenhardt was one of the initial members of the Finance Committee. Dykes was appointed in April 2014. The Finance Committee created an annual budget each year with the assistance of a property management company hired by the Association; the budget included a calculation of the amount of Declarant's funding option. The Finance Committee then forwarded the budget to the Board for approval. The Covenants require all books and records to be kept in accordance with generally accepted accounting principles (GAAP). The Association also annually hired an accounting firm to audit its financial statement, the results of which are published.

---

[4] Eisenhardt bought her property in 2007; Dykes purchased his in 2013.

On April 28, 2015, Dykes met with members of the property management firm and the Association's auditor, Jim Corbett, to review the 2014 annual audit. During this meeting, Dykes raised concerns regarding the budget calculations, specifically "whether GAAP considers bad debt expenses/allowances as an operating expense" for purposes of determining Declarant's financial obligation to the Association. The "bad debt" at issue was unpaid dues owed to the Association by lot owners. Dykes's concern was that the auditor's formula for calculating Declarant's annual contribution under the funding option excluded this "bad debt" from the total operating expenses of the Association. The Finance Committee asked Corbett to further investigate and advise as to this concern. Corbett reviewed the Organizational Documents, current and prior budgets, and GAAP, and met with the chief financial officer of the property management firm and other CPAs in his office to confirm the accuracy of the calculations. After his review, Corbett stated to Dykes, "The financials are GAAP—no question." Dykes disagreed; however, the Finance Committee and Board continued to calculate Declarant's funding alternative with the "bad debt" excluded from the Association's operating expenses.[5]

In November 2016, the Board called a special meeting to again vote on an amendment to the Covenants to extend the funding option from December 31, 2016 to December 31, 2019 (2016 Amendment). The 2016 Amendment passed, although Representatives voted against it.

On June 30, 2017, Representatives filed a Summons and Complaint asserting three causes of action: (1) breach of fiduciary duty, (2) unjust enrichment, and (3) piercing the corporate veil/alter ego/amalgamation. Representatives based these claims on their allegations that the defendants "breached their duty of loyalty by failing to comply with the requirements of the [Organizing] Documents and failing to use GAAP in calculating their contributions to the Association," resulting in the diversion of funds from the Association to the Declarants.[6] Representatives later filed two amended complaints. The First Amended Complaint, filed on June 10, 2019, added SLF IV/SBI JV, LLC; SLF IV/SBI Properties MM, LLC; SLF IV/SBI Development Holdings, LLC; Stratford Land Fund IV, L.P.; Realstar; Sunstar;

---

[5] We note, however, that this was not the first time Dykes raised the issue. He first raised it in 2014.

[6] The circuit court referred to the claims arising from these allegations as "the Math" and the claims arising from the passage of the Amendments extending the Declarant's funding option as "the Amendments." We will use this same terminology throughout.

Rick Schultz; Rick Taylor; and Thomas Plankers as defendants.[7] It also added a cause of action under the South Carolina Unfair Trade Practices Act (SCUTPA), as well as allegations that Declarants and Individuals breached their fiduciary duty to the Association by amending the Covenants in 2011 and 2016 to extend the Declarant's funding option. The Second Amended Complaint added more detailed facts and background to support their claims.

Declarants filed multiple partial motions for summary judgment, raising the grounds of (1) the business judgment rule; (2) statute of limitations; (3) the validity of the Amendments; (4) the derivative capacity of Representatives; (5) lack of standing; and (6) the insufficiency of the SCUTPA claim. Individuals also filed motions for summary judgment raising some or all of these same issues. Representatives filed two motions for summary judgment, asserting Declarants were liable for underfunding the Association through their control of the Board and superior voting power and breached their fiduciary duty by failing to accurately calculate their funding option and by voting for amendments to the Covenants at the expense of the Association. The circuit court held a hearing on all motions, after which it issued four separate orders granting summary judgment in favor of Declarants and Individuals as to all of Representatives' claims.

The circuit court granted summary judgment to Stratford and Stratford Land Manager (Stratford Order), finding that "[a]ll allegations and causes of action brought by [Representatives] [were] based on actions/omissions after January 1, 2011," by which time Stratford and Stratford Land Manager had divested their interests in Wild Wing. As to the remaining Declarants and Liu (Declarant Order), the circuit court granted summary judgment on the grounds that (1) Representatives' claims were barred by the business judgment rule; (2) Representatives' claims were barred by the South Carolina Nonprofit Corporations Act; (3) the statute of limitations had expired; and (4) Representatives lacked standing and Representatives' SCUTPA claims were barred because SCUTPA does not allow derivative actions. The circuit court found the same four grounds in favor of Schultz, Taylor, and Plankers (2016 Board Individual Order), as well as Teal, Black, and Edwards (2011 Board Individual Order). Further, the Declarant Order found that Representatives "voluntarily dismissed the unjust enrichment, veil piercing, and alter ego claims at that summary judgment hearing." The 2011 Board Individual Order and 2016 Board Individual Order found that Representatives

---

[7] We refer to the corporate defendants collectively as Declarant Respondents, and Teal, Black, Edwards, Schultz, Taylor, Plankers, Liu, and Dou collectively as Individual Respondents.

"abandoned or dismissed their unjust enrichment and SCUTPA claims . . . or otherwise conceded that th[o]se claims would fail of a necessary element should [Representatives] not prevail on their breach of fiduciary duty claims."  None of the four orders contained a ruling on Representatives' arguments that equitable tolling or the adverse domination doctrine prevented summary judgment. Representatives did not file motions for reconsideration.  This appeal followed.

## ISSUES ON APPEAL

I.    Did the circuit court err in finding that Representatives failed to offer evidence that Declarants breached their fiduciary obligations to the Association?

II.   Did the circuit court err in ruling by summary judgment that Representatives' claims are barred by the business judgment rule?

III.  Did the circuit court err in ruling by summary judgment that Representatives' claims are barred by the South Carolina Nonprofit Act?

IV.   Did the circuit court err in ruling by summary judgment that Representatives' claims are barred by the statute of limitations?

V.    Did the circuit court err in ruling by summary judgment that Representatives' claims are barred under SCUTPA?

## STANDARD OF REVIEW

"In reviewing a grant of summary judgment, our appellate court applies the same standard as the trial court under Rule 56(c), SCRCP."  *Woodson v. DLI Props., LLC*, 406 S.C. 517, 528, 753 S.E.2d 428, 434 (2014).  A circuit court may grant "a motion for summary judgment when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Buonaiuto v. Town of Hilton Head Island*, 440 S.C. 144, 150, 889 S.E.2d 625, 628 (Ct. App. 2023) (quoting Rule 56(c), SCRCP).  "On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party." *Beaufort Cnty. Sch. Dist. v. United Nat. Ins. Co.*, 392 S.C. 506, 515, 709 S.E.2d 85, 90 (Ct. App. 2011).

## LAW/ANALYSIS

Representatives set forth numerous issues on appeal. Because we find the application of the statute of limitations is dispositive as to the bulk of the issues raised, we have analyzed that issue first.

## I.    STATUTE OF LIMITATIONS

Representatives assert the circuit court erred in finding their claims were barred by the statute of limitations because any "claims against [] Declarants, their directors and related entities are tolled while [] Declarants still control the Association." They also argue the circuit court failed to engage in "a statute of limitations analysis for this unique derivative claim." We disagree.

Two statutes of limitation are relevant to Representatives' claims. South Carolina's general civil remedies statute provides for a *three-year* statute of limitations, which begins to run "from the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct." *See* S.C. Code Ann. § 15-3-530(1), (5) (2005) (stating actions "upon a contract, obligation, or liability, express or implied" and actions for "any injury to the person or rights of another, not arising on contract and not enumerated by law" must be commenced within three years); *Rumpf v. Massachusetts Mut. Life Ins. Co.*, 357 S.C. 386, 394, 593 S.E.2d 183, 187 (Ct. App. 2004) (explaining the discovery rule applies to causes of action under section 15-3-530). Additionally, the South Carolina Nonprofit Corporation Act provides that "[a]n action against a director asserting the director's failure to act in compliance with this section and consequent liability must be commenced before the *sooner* of (i) *three years* after the failure complained of or (ii) *two years* after the harm complained of is, or reasonably should have been, discovered." S.C. Code Ann. § 33-31-830(f) (2006) (emphasis added).

Representatives' arguments that they are entitled to equitable tolling or that the derivative nature of the claims changes the statute of limitations analysis are not preserved. As Representatives acknowledge, although they raised these arguments to the circuit court, the circuit court did not address these arguments in any of its orders; however, Representatives did not file a Rule 59(e), SCRCP, motion. *See I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000) ("If the losing party has raised an issue in the lower court, but the court fails to rule upon it, the party must file a motion to alter or amend the judgment in order to preserve the issue for appellate review."). Additionally, Representatives' argument that the discovery rule is inapplicable in the derivative context is not supported by any authority; thus, we find this argument is abandoned. *See Bryson*

*v. Bryson*, 378 S.C. 502, 510, 662 S.E.2d 611, 615 (Ct. App. 2008) ("An issue is deemed abandoned and will not be considered on appeal if the argument is raised in a brief but not supported by authority.").

In the Declarant Order and the 2016 Board Individual Order, the circuit court found Representatives' claims regarding the Math were barred by both the two-year and three-year statutes of limitation, and their claims regarding the Amendments were barred by the two-year statute. In the 2011 Board Individual Order, it found all claims were barred by the two-year statute of limitations. Although we question whether the two-year statute was applicable to Declarants, Declarants argued its applicability at the hearing, and Representatives did not argue otherwise at the hearing or in their letter to the circuit court detailing their objections to the proposed orders. Further, Representatives did not file a Rule 59(e), SCRCP, motion to clarify the circuit court's ruling as to which statute applied to which defendants, and they do not raise this question in their brief. Thus, we find the circuit court's rulings applying the two-year statute as to both the Math and the Amendment claims for both Declarants and Individuals are the law of the case. *See Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 329, 730 S.E.2d 282, 285 (2012) ("[A]n unappealed ruling, right or wrong, is the law of the case."); *Nelums v. Cousins*, 304 S.C. 306, 307, 403 S.E.2d 681, 681-82 (Ct. App. 1991) (finding an issue was "not preserved for appellate review since the [circuit] court was never afforded the opportunity to rule on the clarity of its order because [the appellant] made no motion, as she was required to do, pursuant to Rule 59(e)[, SCRCP]").

Accordingly, because the claims regarding the Amendments were not raised until the first Amended Complaint was filed on June 30, 2019, and the Amendments were passed in November 2011 and November 2016, we affirm the circuit court's grant of summary judgment based upon the expiration of the statute limitations as to the Amendments. *See Town of Summerville v. City of North Charleston*, 378 S.C. 107, 109-10, 662 S.E.2d 40, 41 (2008) ("A grant of summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.").

However, even applying the two-year statute of limitations, we find the circuit court improperly dismissed the Math claims *in their entirety* because any claims based on actions or omissions of the defendants that occurred after June 30, 2015,

were timely.[8]  *See* § 33-31-830(f) (stating "[a]n action against a director asserting the director's failure to act in compliance with this section and consequent liability must be commenced before . . . two years after the harm complained of is, or reasonably should have been, discovered").  Nevertheless, although we find the circuit court erred in granting summary judgment based on the statute of limitations as to the post-June 30, 2015 Math claims, we affirm their dismissal on the alternative grounds discussed below.[9] [10]

---

[8] Representatives have argued throughout the litigation that Declarants and the individuals they appointed to the Board are so enmeshed that, essentially, the actions of the individuals became the actions of Declarants.  However, in our view, there is no evidence in the record to support this contention.  Moreover, even if we were to accept this argument, the two-year statute of limitations would then undoubtedly apply, and thus, the Amendment claims and pre-June 30, 2015 Math claims would still be time-barred.  *See* § 33-31-830(f) (stating "[a]n action against a director . . . must be commenced before the sooner of (i) three years after the failure complained of or (ii) two years after the harm complained of is, or reasonably should have been, discovered").

[9] We disagree with Representatives' contention that they were not on notice of a potential cause of action until the Board specifically told Dykes that he would have to file a lawsuit in order for them to address the Math issue.  *See Grimsley v. S.C. L. Enf't Div.*, 415 S.C. 33, 40, 780 S.E.2d 897, 900 (2015) ("In determining whether any triable issue of fact exists, the evidence and all inferences which can *reasonably* be drawn therefrom must be viewed in the light most favorable to the nonmoving party." (quoting *Quail Hill, L.L.C. v. County Of Richland*, 387 S.C. 232, 235, 692 S.E.2d 499, 505 (2010)); *id.* ("Even though courts are required to view the facts in the light most favorable to the nonmoving party, to survive a motion for summary judgment, 'it is not sufficient for a party to create an inference that is not reasonable or an issue of fact that is not genuine.'" (quoting *Town of Hollywood v. Floyd*, 403 S.C. 466, 477, 744 S.E.2d 161, 166 (2013)).  Our holding above accepts that Representatives were not on notice until Dykes raised the issue to the Finance Committee in April 2015 and was told that leaving out the "bad debt" complied with GAAP and the calculation would not be changed.  Yet, Dykes had already been a member of that committee for a year by that point, and Eisenhardt had been a member for at least two years.  The annual audit reports for 2008-2013 had been published by the time Dykes was appointed to the committee in April 2014, and Dykes acknowledged he raised the issue as early as 2014.

[10] We affirm the circuit court's grant of summary judgment based on the statute of limitations as to all Math claims that accrued prior to June 30, 2015.

In accordance with these holdings, our discussion from this point forward pertains only to the Math claims arising on or after June 30, 2015.

## II.  FIDUCIARY DUTY AND BUSINESS JUDGMENT RULE

Representatives argue the circuit court erred in holding that Representatives failed to offer evidence that Declarants breached their fiduciary obligations to the Association and in ruling that Representatives' claims are barred by the business judgment rule and the South Carolina Nonprofit Act.[11]  We disagree.

Developers often owe a fiduciary duty to homeowners and homeowners' associations.  *See, e.g.*, *Walbeck v. I'On Co., LLC*, 439 S.C. 568, 585, 889 S.E.2d 537, 546 (2023), *reh'g denied* (July 26, 2023) ("Developers owe fiduciary duties to homeowners and homeowners' associations regarding common areas.").  These duties arise from a developer's control over the homeowners' association's board of directors, construction within the development, and the developer's duty to maintain and convey common areas in good repair.  *Id.* at 585 n.11, 880 S.E.2d at 546 n.11; *Goddard v. Fairways Dev. Gen. P'ship*, 310 S.C. 408, 414, 426 S.E.2d 828, 832 (Ct. App. 1993) (assuming without deciding that a developer owed homeowners a fiduciary duty due to the developer's "superior voting power").  "[A]nyone acting in a fiduciary relationship shall not be permitted to make use of that relationship to benefit his own personal interests."  *Lesesne v. Lesesne*, 307 S.C. 67, 69, 413 S.E.2d 847, 848 (Ct. App. 1991).  "This makes sense because the fiduciary relationship imposes a 'special confidence in another so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing confidence.'"  *Walbeck*, 439 S.C. at 586, 889 S.E.2d at 546 (quoting *Bennett v. Estate of King*, 436 S.C. 614, 633, 875 S.E.2d 46, 56 (2022)).

"A corporation may exercise only those powers granted to it by law, its charter or articles of incorporation, and any bylaws made pursuant thereto."  *Fisher v. Shipyard Vill. Council of Co-Owners, Inc.*, 415 S.C. 256, 271, 781 S.E.2d 903, 911 (2016).  "A corporation's actions taken within the scope of the powers granted it are considered *intra vires* acts; acts beyond the scope of its powers, however, are *ultra vires* acts."  *Id.*  "In South Carolina, courts apply the business judgment rule to protect corporate directors."  *Id.* at 270, 781 S.E.2d at 910.  "The business judgment rule applies to *intra vires* acts of the corporation, but not to *ultra vires* acts."  *Id.* at 271, 781 S.E.2d at 911.

---

[11] S.C. Code Ann. §§ 33-31-101 to -1708 (2006 & Supp. 2024).

"Under the business judgment rule, a court will not review the business judgment of a corporate governing board when it acts within its authority and it acts without corrupt motives and in good faith." *Dockside Ass'n, Inc. v. Detyens*, 291 S.C. 214, 217, 352 S.E.2d 714, 716 (Ct. App. 1987) (*Dockside I*). "In a dispute between the directors of a homeowners association and aggrieved homeowners, the conduct of the directors should be judged by the 'business judgment rule' and absent a showing of bad faith, dishonesty, or incompetence, the judgment of the directors will not be set aside by judicial action." *Goddard*, 310 S.C. at 414, 426 S.E.2d at 832; *see also* § 33-31-830(b)(2)-(3) ("In discharging his or her duties, a director is entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, if prepared or presented by . . . public accountants, or other persons as to matters the director reasonably believes are within the person's professional or expert competence . . . [or] a committee of the board of which the director is not a member, as to matters within its jurisdiction . . . ."); § 33-31-830(d) ("A director is not liable to the corporation, a member, or any other person for any action taken or not taken as a director, if the director acted in compliance with this section."). Further, "the burden of proving good faith is not on the governing board; the burden of proving a lack of good faith is borne, rather, by those challenging the board's actions." *Dockside Ass'n, Inc. v. Detyens*, 294 S.C. 86, 87, 362 S.E.2d 874, 874 (1987) (*Dockside II*).

We hold the circuit court properly granted summary judgment as to the breach of fiduciary duty claim. *See Woodson*, 406 S.C. at 528, 753 S.E.2d at 434 ("In reviewing a grant of summary judgment, our appellate court applies the same standard as the [circuit] court under Rule 56(c), SCRCP."); *Buonaiuto*, 440 S.C. at 150, 889 S.E.2d at 628 ("A [circuit] court may properly grant a motion for summary judgment when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting Rule 56(c), SCRCP)). Although we agree that Declarants, as the developers of Wild Wing, may have owed a fiduciary duty to the homeowners and the Association due to their continued control of the Board, Declarants were not Board members, and thus, did not take any action in calculating the funding option. Rather, the amount of the Declarant's contribution was calculated jointly by the Finance Committee, the property management company, and the Association's accountant. Moreover, we believe the business judgment rule applies to the actions of Individuals as Board members who voted to approve the budget. *See Goddard*, 310 S.C. at 414, 426 S.E.2d at 832 ("In a dispute between the directors of a homeowners' association and aggrieved

homeowners, the conduct of the directors should be judged by the 'business judgment rule' . . . ."); *Dockside I*, 291 S.C. at 217, 352 S.E.2d at 716 ("Under the business judgment rule, a court will not review the business judgment of a corporate governing board when it acts within its authority and it acts without corrupt motives and in good faith.").

Here, the circuit court found the actions of the Individuals were *intra vires* acts, and we agree. *See Fischer*, 415 S.C. at 271, 781 S.E.2d at 911 ("The business judgment rule applies to *intra vires* acts of the corporation, but not to *ultra vires* acts."). The Bylaws authorize the Board to "prepar[e] and adopt[] an annual budget in which there shall be established the contribution of each [o]wner to the [c]ommon [e]xpenses." Further, the Covenants specifically create a funding option that allows Declarants to contribute "a sum equal to the actual amount of actual operating expenditures incurred by the Association for that portion of the calendar year less an amount equal to the total assessments made by the Association against [o]wners of [l]ots other than those owned by the Declarant," rather than a per-lot assessment. When a question arose about the accuracy of the calculation for the funding option presented in the budget, the Finance Committee asked Corbett, the Association's auditing accountant, to look into the issue and report back, which he did. Corbett disagreed with Dykes's view and stated the calculation complied with GAAP.

We find the members of the Board were entitled to rely on the Finance Committee's calculation and Corbett's representations, in addition to their own knowledge and experience. *See* § 33-31-830(b)(2)-(3) ("In discharging his or her duties, a director is entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, if prepared or presented by . . . public accountants, or other persons as to matters the director reasonably believes are within the person's professional or expert competence . . . [or] a committee of the board of which the director is not a member, as to matters within its jurisdiction . . . ."); § 33-31-830(d) ("A director is not liable to the corporation, a member, or any other person for any action taken or not taken as a director, if the director acted in compliance with this section."). Additionally, Representatives have the burden of proving Declarants and Individuals did not act in good faith. *See Dockside II*, 294 S.C. at 87, 362 S.E.2d at 874 ("[T]he burden of proving good faith is not on the governing board; the burden of proving a lack of good faith is borne, rather, by those challenging the board's actions."). We find Representatives have failed to meet this burden.

The Finance Committee, which apparently accepted Corbett's reasoning and opted to continue excluding the "bad debt," was made up of non-Declarant lot owners.[12] Although Dykes eventually brought his concerns directly to the Board, he admitted that he had no evidence that Declarants and Board members had colluded, that any Board member benefitted financially from the decisions they made, or that Declarants ever threatened any Board member with being fired or losing their job if they did not take certain actions. Similarly, Plankers, one of the named Board members, testified the only direction his employer gave him was to make Wild Wing successful. He further testified that he relied on the property management company to advise him because he was "a golf professional," not "a person that manages property." Edwards, another Board member, testified he understood Dykes's concern, but he simply disagreed the calculation was incorrect. Edwards also stated that the amount was calculated by the Finance Committee, the property management company, and the auditor, and he never directed anyone as to how it should be calculated. Because we find Representatives have not met their burden of proving a lack of good faith, we hold the business judgment rule applies and we affirm the circuit court. *See Walbeck*, 439 S.C. at 586, 889 S.E.2d at 546, (explaining conduct that would violate one's fiduciary duty to another includes "self-dealing, fraud, unconscionable conduct, misrepresentations, etc."); *Dockside I*, 291 S.C. at 217, 352 S.E.2d at 716 ("Under the business judgment rule, a court will not review the business judgment of a corporate governing board when it acts within its authority and it acts without corrupt motives and in good faith.").[13]

## III.    UNFAIR TRADE PRACTICES

Representatives argue the circuit court erred in determining that a SCUTPA claim cannot be brought in a representative capacity and that they had not proven that the Association suffered an injury-in-fact. We disagree.

---

[12] In his affidavit, Dykes stated the Finance Committee did not agree with the reasoning to exclude the bad debt or agree to continue it. However, the record does not contain any evidence of this other than Dykes's assertion, and the budgets produced by the Finance Committee apparently continued to exclude the "bad debt" post-2015, even after the Association hired a new accountant.

[13] We note that the business judgment rule is codified in section 33-31-830 of the South Carolina Nonprofit Act, as quoted throughout this section. The circuit court made a separate ruling as to the applicability of that statute as a bar to these claims; however, because the analysis is essentially the same, we have analyzed the nonprofit statutes as part of this section, and we affirm on that basis as well.

First, we note that Representatives' argument regarding SCUTPA claims in the derivative context is not supported by any authority; thus, this argument is abandoned. *See Bryson*, 378 S.C. at 510, 662 S.E.2d at 615 ("An issue is deemed abandoned and will not be considered on appeal if the argument is raised in a brief but not supported by authority."). Nonetheless, we find the circuit court correctly held the SCUTPA claims were prohibited.

SCUTPA states "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method . . . may bring an action individually, *but not in a representative capacity*, to recover actual damages." S.C. Code Ann. § 39-5-140(a) (2023). Consistent with this statutory language, South Carolina courts have repeatedly held that "an unfair trade practices claim may not be brought in a representative capacity." *Wogan v. Kunze*, 366 S.C. 583, 609, 623 S.E.2d 107, 121 (Ct. App. 2005), *aff'd as modified*, 379 S.C. 581, 666 S.E.2d 901 (2008); *see also Dema v. Tenet Physician Servs.-Hilton Head, Inc.*, 383 S.C. 115, 122, 678 S.E.2d 430, 434 (2009) (explaining "[c]lass action suits are representative lawsuits in which a single individual or a small group of individuals represent the interests of a larger group" and "SCUTPA . . . prohibits a plaintiff from bringing a suit in a representative capacity"). Here, Representatives brought this lawsuit as a shareholder derivative complaint, which is representative in nature. *See, e.g.*, *Becker v. Becker*, 225 N.W.2d 884, 885 (1975) (holding in a derivative action the equitable defense of unclean hands was available against a plaintiff shareholder because a "plaintiff who is subject to an equitable defense should not be able to avoid that defense by bringing suit in a representative capacity"). Accordingly, we hold the SCUTPA claims are prohibited, and we affirm the circuit court as to this issue.

**CONCLUSION**

We **AFFIRM** the circuit court's grant of Declarants' and Individuals' motions for summary judgment.[14]

**WILLIAMS, C.J., and MCDONALD and TURNER, JJ., concur.**

---

[14] We decide this case without oral argument pursuant to Rule 215, SCACR.